## RAND ET AL., EXECUTORS OF RAND, *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 213.  Argued March 10, 11, 1919.—Decided April 21, 1919.

Revised Statutes, § 3226, providing that no suit shall be maintained for recovery of illegal or erroneous taxes until appeal made to the Commissioner of Internal Revenue and decision had thereon, and fixing a period within which suit may be brought when his decision is delayed more than six months, was made applicable by § 31 of the War Revenue Act of June 13, 1898, 30 Stat. 448, 464, to inheritance taxes collected under that act.  P. 507.

As applied to a claim for a refund of such inheritance taxes, this bar of Rev. Stats., § 3226, and the bar of § 3228, which requires all claims for the refunding of erroneous or illegal internal taxes to be presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued, were removed by the Acts of June 27, 1902, c. 1160, § 3, 32 Stat. 406, and of July 27, 1912, c. 256, 37 Stat. 240, if the claimant complied with their requirements and presented his claim to the Commissioner.  *Id.*

The fact that a tax was voluntarily paid, without protest, is not an impediment to a refund under the Act of July 27, 1912, *supra.*  *United States* v. *Hvoslef,* 237 U. S. 1.  P. 508.

The Act of July 27, 1912, *supra,* § 2, in providing that repayment shall be made to "such claimants as have presented or shall hereafter present their claims," requires a positive and individual assertion of the claim, within the time limited; the claimant may not rely upon claims presented by others not manifestly his own or clearly made on his behalf, nor excuse the presentation of his claim upon the assumption that it would have been useless, judged by results in other cases.  *Id.*

52 Ct. Clms. 72, 285, affirmed.

THE case is stated in the opinion.

*Mr. H. T. Newcomb,* with whom *Mr. Frederick L. Fishback* was on the briefs, for appellants.

*Mr. Assistant Attorney General Brown,* with whom *Mr. Charles H. Weston* was on the brief, for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This case involves a consideration of the inheritance tax law of June 13, 1898, generally called the War Revenue Act (30 Stat. 448, 464–5), and was brought in the Court of Claims to recover the amount of a tax assessed and collected under that law.

The Court of Claims dismissed the case on the grounds (1) that appellant did not file any claim with the Commissioner of Internal Revenue; (2) that the tax was voluntarily paid. The decision is resisted by appellant and other contentions are made against the tax.

Section 29 of the Act of 1898 provided that any person or persons having in charge or trust, as administrators, etc., any legacies or distributive shares arising from personal property, the amount of the property exceeding $10,000 in actual value, passing, after the passage of the act, from any person possessed of the property, either by will or by the intestate laws of any State or Territory, was made subject to a tax to be paid to the United States, the amount of tax being dependent upon the degree of relationship of the taker to the person who died possessed of the property. And there was an increase of the tax with an increase of the value of the property possessed in excess of $25,000.

The facts found we give only in summary: June 6, 1900, Edmund Dwight died testate. His will was admitted to probate June 28, 1900. Elizabeth Cabot, his sister, was named executrix of the will. She accepted and qualified, but died January 30, 1902, and Philip Cabot, her son, was appointed administrator, with the will annexed. He qualified. The will, so far as material,

provided as follows: "I give to the New England Trust Company, a corporation duly chartered by the State of Massachusetts, and located in the city of Boston, the sum of one hundred and twenty-five thousand dollars ($125,000), to be invested in the general trust fund of the company and held upon the following trusts: To pay to Mrs. Jennie Lathrop Rand . . . . the annual net income thereof in semi-annual payments during her life."

October 1, 1900, the trust fund was deposited with the New England Trust Company, the trustee designated in the will, which accepted the trust. The fund was not invested separately but as part of the general trust fund of the company. Semi-annual payments of the accrued net income were made to Mrs. Rand to January 1, 1915. No other payments were made to her or for her benefit, nor did she become entitled to any other or additional payments on account of the trust.

September 27, 1900, Elizabeth Cabot made to the United States Bureau of Internal Revenue a return of the legacies in her charge as executrix and passing from Dwight's estate to the persons named therein, in which was included the legacy to Mrs. Rand, aged 63, stranger to the decedent, of the clear value of $125,000; the taxable amount of which, after a particular exemption, she stated to be $40,355.91, with $7.50 per hundred dollars as the rate of taxation, and the amount of tax as $3,026.69, and she reported the legacy as in trust with the New England Trust Company. It is not shown that the collector of internal revenue or other officer made a demand for the tax, but September 28, 1900, Elizabeth Cabot paid to the proper collector the tax out of the funds and it has since been retained by the United States. The sum was advanced by Elizabeth Cabot, at the request of Mrs. Rand and other legatees, pursuant to an agreement made September 28, 1900, by which the taxes paid by Elizabeth Cabot were to be refunded to her and were repaid to her.

The tax paid by her was determined to be the proper tax by regulations of the Commissioner of Internal Revenue on December 16, 1898. The regulations contained rules and tables for the determination of the duty or tax to be paid to the United States upon legacies or distributive shares arising from personal property, imposed by the Act of June 13, 1898.

The only assessment ever made under §§ 29 and 31 of the Act of 1898 and amendments upon the interest of Mrs. Rand in the interest created in the trust fund under Dwight's will was made in pursuance of the rules, tables and instructions of the Commissioner and there was no specific investigation by that officer of her expectancy of life or as to the earning capacity of the trust fund otherwise than by application of the tables. The value of her interest was so determined to be $42,320.60, from which was deducted the inheritance tax of Massachusetts, leaving a net balance of $40,355.91, upon which the tax was assessed at the statutory rate of $7.50 per hundred dollars. The computation was from the death of Dwight, the decedent.

Under authority of the Act of Congress of July 27, 1912, c. 256, 37 Stat. 240, a claim for the refund of the sum paid, to-wit, $3,026.69, was filed with the Commissioner of Internal Revenue, December 24, 1913, by _. T. Newcomb, representing himself to be the attorney for the New England Trust Company, trustee under the will of Dwight. And on December 30, 1913, attorneys Lyon & Lyon, of Washington, D. C., acting for and in behalf of the administrator *de bonis non* of Edmund Dwight, filed with the Commissioner of Internal Revenue a claim for the refund of the tax. The grounds of both claims were that the tax was illegally and erroneously assessed and collected and contrary to the provisions of the Act of 1898 and amendments and that the same should be refunded by virtue of the Act of June 27, 1902, c. 1160, 32

Stat. 406, and the Act of July 27, 1912. The claims were rejected by the acting commissioner March 28, 1914. It is not shown that Mrs. Rand or any person acting for her or in her behalf filed a claim with the Commissioner.

The court, as we have said, dismissed the claim without considering the validity of the assessment. The conclusion is contested by appellant in an elaborate brief and defended by the Government, relying primarily upon § 3226, Rev. Stats., as the Court of Claims did. The case presents, therefore, at the outset the question whether the conditions of suit required by that section were satisfied, as qualified or relieved by the Acts of 1902 and 1912, hereafter referred to.

Section 3226 provides that no suit shall be maintained for the recovery of a tax illegally or erroneously assessed or collected, "until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner has been had therein." If, however, it is provided, decision be delayed more than six months from the date of the appeal, suit may be brought within another period prescribed, which it is not necessary to mention.

The section is clear enough and unless modified or changed precludes the present suit as it was applicable to the tax involved (§ 31 of the Act of 1898). But § 3 of the Act of 1902 and § 2 of the Act of 1912, *supra,* are invoked as removing the bar of § 3226. Section 3 of the Act of 1902 directs the Secretary of the Treasury to refund upon proper application being made to the Commissioner of Internal Revenue any tax that may have been collected on contingent beneficial interests which shall not have become vested prior to July 1, 1902. Section 2 of the Act of July 27, 1912, has a like direction to the Secretary of the Treasury to pay "such claimants as have presented

or shall hereafter so present their claims, and shall establish such erroneous or illegal assessment and collection, any sums paid by them." There is no question that the cited sections remove the bar of §§ 3226 and 3228 if appella it has met their requirements and presented to the Commissioner of Internal Revenue a claim for the refund of the tax. Nor is the fact that the tax was voluntarily paid, that is, without protest, an impediment to the application of the Act of 1912. *United States* v. *Hvoslef,* 237 U. S. 1.

It will be observed that the repayment is to be made to "such claimants as have presented or shall hereafter so present their claims." Has the appellant satisfied these requirements? Two claims were presented, one by the attorney of the Trust Company and one by attorneys acting for and in behalf of the administrator *de bonis non* of the estate of Edmund Dwight. Both claims were disallowed because, to quote the Commissioner's letter, the "tax was paid upon the absolutely vested interest of a stranger amounting to more than $25,000 and taxed at the legal rate of $7.50 per $100, and accordingly, under the decision of the Supreme Court in the *Knowlton* and *Fidelity Trust* cases, all this tax was legally due."

The first demand, it is said, "was presented by the testamentary trustee, then holding trust funds to the use of the claimant and authorized and required to protect her interests under and in connection with the trust fund. The other claim was filed by the personal representative of the decedent, successor to the executrix who had actually made the payment, although such payment was at the cost of" Mrs. Rand. And it is urged that "the officers of the Government were not misled at any time; there was no question as to the identity of the payment sought to be recovered or that of the person to whose benefit recovery would accrue." The demands, therefore, it is the further contention, satisfied the statute and should

be ascribed to Mrs. Rand, and that the statute being remedial, its remedy is to be promoted by a liberal construction, not impeded by a strict and technical one; and there are adduced statutes that have been liberally construed. 49 Ct. Clms. 699; 51 Ct. Clms. 408.

The inutility of another demand is emphasized, either for information to the department or for the assertion of her claim. She knew, it is said, the precise facts of the demands that had been made and she knew, besides, that claims of the class to which hers belonged had been uniformly rejected and that another claim in her own name would have been no less a "useless ceremony" than that which was declared in one of the cited cases. And she insists that such ceremony finds exemption in the case of *Weaver* v. *Ewers*, 195 Fed. Rep. 247 (C. C. A.). The case is not similar to that at bar. The tax there involved was paid under protest and there had been an application in writing by the payer of it for a refund of the amount. The application was held to have satisfied § 3226 and that there was no necessity for another after the tax was paid. The case at bar does not present the same situation. Its tax was paid without protest and appellant seeks to avail herself of the Act of 1912—not by performing its condition, but by asserting an exemption from performance because of its supposed inutility. The Government besides contests the sufficiency and sincerity of her excuse and points out that not only does the record fail to show that the presented claims were made in her behalf but that one of the claims was made eight days and the other two days before the time within which claims could have been made and that the decisions rejecting them were several months afterwards, and she could not therefore have been influenced by the rejection. If it be replied that she relied on the rulings upon claims of the class to which hers belonged, the query occurs, Why did not the trustee of the fund and the representative of the estate

rely on those rulings? Their relation to the taxes, whatever it was, was not as intimate as hers and hers would seem to have called for more solicitude and a demand by her as necessary as suit by her. It seems, therefore, that this suit is a postfact resolution and an experiment with the situation after the indulgent period of the statute. The Act of 1912 cannot be made so compliant. It had its purpose and it is not satisfied by representative or negative action; it requires a positive and individual assertion of claim. The condition was easy of performance, its grant a concession, and there is no room for the plea to enlarge it beyond its words. It is direct and clear and liberal enough of itself. It says to the taxpayer: Make a claim for the tax you have paid, show its illegality, and it will be repaid to you. We cannot relax its requirements—certainly not on the assumption that they might have been useless if complied with.

We see no reason for granting the motion for further findings nor the motion for certiorari, and both are denied.

*Judgment affirmed.*