Harry G. JOHN, Jr., Lorraine Elise, John Mulberger, Adele K. Miller, Executrix of the Will of Frederick C. Miller, deceased, Charles M. Bransfield, Claire Miller McCahey, Marguerite Miller Bransfield, Loretta Kopmeier, Charlotte E. Blommer, residuary legatees under Will of Fred A. Miller, deceased, late of the City of Wauwatosa, County of Milwaukee, State of Wisconsin, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 5464.

United States District Court
E. D. Wisconsin.

Feb. 16, 1956.

A. W. Schutz, Milwaukee, Wis., for plaintiffs.

Edward G. Minor, U. S. Atty., Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This case is before the Court on a motion of the defendant for judgment on the pleadings brought under Rule 12(c), 28 U.S.C.A. The facts as appear in the complaint are as follows: The plaintiffs are the residuary legatees under the will of Fred A. Miller, deceased. His will was admitted to probate on the 27th of December, 1943. In 1945 the executor filed an estate tax return to which the government took exception. The executor had valued the stock of the Miller Brewing Company at $300 per share. The government, however, claimed that the stock should be valued at $600 a share. The executor filed a protest of the $600 share valuation, the outcome of which was an agreement dated October 24, 1946, between the government and the executor that the Miller Brewing Company stock should be valued at $450 a share. That agreement was evidenced by the signing of a Form 870 agreement. That agreement was accepted on behalf of the Commissioner of Internal Revenue by Albin Pearson, head of the Chicago Division of the Technical Staff. It does not appear that the agreement was ever approved by the Secretary or Under Secretary of the Treasury or by an Assistant Secretary of the Treasury.

In February, 1949, the executor of the estate filed a claim for refund based upon a finding of the County Court of Milwaukee County that no amount of two large bequests was subject to Wisconsin inheritance taxes. As a result, the executor claimed that the estate had paid out some $132,000 to two charitable organizations and had thus overpaid the federal estate tax in the sum of $92,395. The executor also claimed that whereas he had estimated attorneys' fees to be $100,000 in the estate tax return filed in 1945, the fees actually granted by the County Court were in the sum of $145,-000, and that because of the increased attorneys' fees allowed by the court, the federal estate tax had been overpaid in the amount of $31,500.

On January 4, 1950, the executor received from the Commissioner of Internal Revenue a notice of rejection of his claim for refund. Some seven months later the executor was discharged. In December of 1951 the residuary legatees under the will of Fred A. Miller brought this suit for refund of federal estate taxes.

A number of issues presented on the facts as pleaded are involved in adjudicating this matter.

(I) Was the act of the executor in filing for a refund an act in behalf of the residuary legatees which accrues to their benefit so as to fulfill the requirements of Title 26 U.S.C.A. § 3772(a) (1)?

(II) Are the residuary legatees proper parties to bring this action?

(III) Is the agreement concerning the valuation of the Miller Brewing Company stock executed on Form 870 invalid because said agreement was not approved or signed by any statutory authorities?

(IV) Does the agreement contained on Form 870 equitably estop the plaintiffs from bringing this action?

(V) Assuming that the Form 870 agreement is not conclusive and that defendant's motion is denied, what, if any,

rights has the defendant based upon its "counterclaim and/or off-set"?

## I.

The complaint states that after the Form 870 agreement had been signed by the executor, the executor filed a claim for refund setting forth in particularity the grounds therefor, which was rejected by the Commissioner. No claim for refund has ever been filed by any of the residuary legatees. Title 26 U.S.C.A. § 3772(a) (1) provides:

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected * * * until a claim for refund or credit has been duly filed with the Commissioner * * *."

This statute has been interpreted as a condition precedent for the bringing of an action on a claim for refund, the basic right to which stems from the common law and is not derived from statute. Sirian Lamp Co. v. Manning, 3 Cir., 1941, 123 F.2d 776, 138 A.L.R. 1423. Therefore, if the statute quoted above requires the residuary legatees to personally file a claim for refund, that requirement has not been met and they may not now bring a legal action for a refund. The statute states that no suit shall be maintained until a claim for refund has been duly filed with the Commissioner. The statute says no more. It contains no language relative to a situation in which a claim for refund is filed on behalf of another.

The purpose of Section 3772 has been set forth in a number of decisions. In Kales v. United States, 6 Cir., 1940, 115 F.2d 497, 500, it was stated:

"In the administration of Internal Revenue Laws, we are concerned with substance and not form. * * * It is vital to the functions of government that taxes be collected promptly and if errors in returns are made that they be expeditiously corrected. To this end the statute

requires the taxpayer to make a timely charge of overpayment with grounds therefor, that the government may make investigation and refund the amount due, if any, without being subjected to the delay and expense of litigation and any timely claim showing intention to ask a refund of taxes allegedly overpaid and the grounds therefor is sufficient to answer that purpose."

In Murphy v. United States, D.C.Cal. 1948, 78 F.Supp. 236, 239, the court stated:

"The manifest purpose of the requirement that a claim be filed as a condition precedent to suit is to afford the Commissioner opportunity to make administrative settlement prior to resort to the courts * * *."

It would seem that the purpose of the statute requiring a claim for refund has been fulfilled in this case even though the claim for refund was not made directly by the residuary legatees. The Commissioner has had ample opportunity to check the items which were the basis for the refund filed by the executor and has had time to take administrative steps in relation to that claim.

The government relies heavily on Rand v. United States, 249 U.S. 503, 39 S.Ct. 359, 361, 63 L.Ed. 731, as supporting its position that the residuary legatees under the will of Fred A. Miller may not bring this action because they have not personally filed a claim for refund under Title 26 U.S.C.A. § 3772(a) (1). That case contains language, disapproving of representative action in filing a claim for refund, which seems to support the government's claim. A careful reading of the Rand case discloses that the Supreme Court was not referring to the predecessor statute of Title 26 U.S.C.A. § 3772(a) (1), in deciding that case.

In the Rand case the testator died in 1900 and the tax on the estate was paid in that year. Under Sections 3226 and 3228, Revised Statutes, 2nd Edition 1878, no suit could be maintained in any

court until a claim for refund had been filed. Such a claim had to be presented within two years after the cause of action accrued. No claim for refund was filed by Mrs. Rand, who was beneficiary of a trust, or by the trustee or the administrator de bonis non. In 1912 Congress waived the two year statute of limitations contained in Section 3228, Revised Statutes. In effect, the bill provided that claims for refund which were barred by the two year statute of limitations might be brought for years extending back to 1898. Section 2 of that Act, 37 Statutes at Large 240, provided:

"That the Secretary of the Treasury is hereby authorized and directed to pay, * * * *to such claimants as have presented or shall hereafter so present their claims,* and shall establish such erroneous or illegal assessment and collection, any sums paid by them or on their account or in their interest to the United States under the provisions of the Act aforesaid." (Emphasis supplied.)

Under the Act of 1912 the administrator de bonis non and the trustee filed claims for refund. Mrs. Rand never personally filed such a claim but did bring an action for the return of estate taxes paid in 1900. Mrs. Rand attempted to show that she should be allowed the benefit of the claims for refund filed by the trustee and administrator. The Supreme Court considering the peculiar language of the Act of 1912 stated:

"The act of 1912 cannot be made so compliant. It had its purpose and it is not satisfied by representative or negative action; it requires a positive and individual assertion of claim."

The Supreme Court in the Rand case did not consider the question of whether representative action was sufficient to comply with the predecessor statute of Title 26 U.S.C.A. § 3772(a) (1). No cases have been cited dealing with that question nor has the Court been able to find any.

Wisconsin decisions setting out the relationship between an executor or administrator and the beneficiaries or legatees of an estate form a basis, in the Court's opinion, for holding that the act of the executor in filing for a refund should accrue to the benefit of the residuary legatees.

In Hughes v. Velten, 1942, 241 Wis. 257, 5 N.W.2d 791, 794, the court stated:

> "An executor represents the testator * * *. He likewise represents the legatees for whose benefit probate proceedings are had. The guardian represents his ward in the same way, and a trustee represents both the settlor and the *cestui qie trust.*"

In State ex rel. Peterson v. Circuit Court for La Crosse County, 177 Wis. 548, 188 N.W. 645, 647, it was held:

> "The relation between the administrator and the parties interested in the estate is virtually one of express trust, which equity has always the power to enforce."

See also Henneman v. Robinson, 218 Wis. 596, 261 N.W. 725.

 Until the estate was closed the residuary legatees actually had no legal standing to make a claim for refund. As was stated in State ex rel. Peterson v. Circuit Court for La Crosse County, supra:

> "The administrator is the legal owner for the time being of the personal property of which the decedent died possessed, and his title and authority extend so completely to all such property as to exclude for the time being creditors, legatees, and all others beneficially interested in the estate."

In Schoenwetter v. Schoenwetter, 1916, 164 Wis. 131, 159 N.W. 737, 738, it was held:

> "It is well settled that heirs obtain no legal title to personal property by the death of the ancestor, but that the title goes to the executor or administrator."

█ Under the above decisions the Court sees no reason why the act of the executor who was a trustee for the residuary legatees should not accrue to their benefit. The Commissioner has had an opportunity to check the claim for refund made by the executor. Such claim was rejected. The claim of the residuary legatees made in this case is identical with the claim for refund made by the executor. Thus, the government is not prejudiced under Section 3772.

For the foregoing reasons the Court feels that the plaintiffs are not barred from bringing this action because of their failure to have personally filed a claim for refund under their own names.

## II.

█ Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., states that "every action shall be prosecuted in the name of the real party in interest." It is true that the tax was not paid directly by the residuary legatees but rather by the executor. The executor has been discharged. The residuary legatees are, in fact, the real parties in interest since their shares of the estate were reduced by the amount of the refund claimed. The executor certainly had no personal interest in the estate; he in no way benefitted from the distribution of the assets. The Wisconsin cases cited supra make it apparent that the executor was merely a trustee, not only for the estate, but for the residuary legatees.

## III.

█ There is a conflict of legal authorities with regard to whether an agreement concerning the collection of taxes executed on Form 870 or substantially similar forms is final. It is the opinion of this Court that a Form 870 agreement not signed by the proper statutory authorities binds neither the government nor the taxpayer, and may not be used as a bar to the bringing of an action for the refund of taxes.

A case decided in the Eastern District of Wisconsin in 1944 by Judge Duffy, Davidson v. United States, 58 F.Supp.

481, 483, appears to be directly in point even though the fact situation considered by Judge Duffy was different in some material particulars. Judge Duffy in that decision stated:

"The approval of such compromise (a compromise similar to the form 870 agreement under consideration) by either the Secretary, the Under Secretary of the Treasury, or an Assistant Secretary of the Treasury was necessary in order that the same be binding; and an unapproved compromise will not estop a taxpayer from the recovery of any portion of the tax to which he might otherwise be entitled."

Judge Duffy went on to point out that the executed waiver of restrictions was merely an offer on the part of the estate until such time as it was legally accepted by the proper statutory authorities.

Joyce v. Gentsch, 6 Cir., 1944, 141 F. 2d 891, 895, was relied on by Judge Duffy in the Davidson case. In the Joyce case the court stated:

"Upon the principle of the Botany Mills case [Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379], the consent of the Secretary of the Treasury has been considered by circuit courts of appeal as essential to the validity of a stipulation concerning tax liability, where such stipulation is in the *nature of a compromise*." (Emphasis supplied.)

26 U.S.C.A. § 3760(a) provides:

"The Commissioner * * * is authorized to enter into an agreement in writing with any person relating to the liability of such person * * * in respect of any internal revenue tax for any taxable period."

Subsection (b) provides:

"If such agreement is approved by the Secretary, the Under Secretary, or an Assistant Secretary, within such time as may be stated in such agreement * * * such agreement shall be final and conclusive * * *."

It has been held that Section 3760 is the only method by which the government may compromise a tax claim. In Knapp-Monarch Co. v. Commissioner of Internal Revenue, 8 Cir., 1944, 139 F.2d 863, 864, it was held with regard to Section 3760:

"The very fact that Congress has provided a way in which the Internal Revenue Department may bind itself, precludes the possibility of its being bound by some other procedure. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'"

Cases holding that Form 870 was not binding on the United States government because not signed by or approved by the Secretary of the Treasury are Cabin Creek Consol. Coal Co. v. United States, 4 Cir., 1943, 137 F.2d 948; Hamil v. Fahs, D.C.Fla.1955, 129 F.Supp. 837; and Steiden Stores, Inc., v. Glenn, D.C.Ky.1950, 94 F.Supp. 712. To the contrary is Guggenheim v. United States, 1948, 77 F.Supp. 186, 111 Ct.Cl. 165.

### IV.

There has been some disagreement among the courts as to whether a Form 870 agreement equitably estopped a taxpayer from collecting a refund of taxes. The government in this case, as in many others, claims that the statute of limitations has now run on its right to assess further taxes, and that, therefore, it is inequitable to allow a taxpayer to obtain a refund of taxes. Assuming that the statute of limitations has run against any claim of the government for further tax as such, it has a right of off-set or recoupment if it is determined that the evaluation of the stock as set forth in the agreement on Form 870 was, in fact, too low.

Cases holding that there is no equitable estoppel in cases very much like the one now under consideration are Davidson v. United States, supra; Hamil v. Fahs, supra; Cuba Railroad Co. v. United States, D.C., 124 F.Supp. 182;

Cabin Creek Consol. Coal Co. v. United States, supra; Joyce v. Gentsch, supra. A contrary result was reached in the Guggenheim case, supra.

The defense of equitable estoppel does not seem a proper one to decide on a judgment for the pleadings because the Court feels that it would be necessary for the government to supply the Court with more factual background and to submit evidence on the equities involved. As was stated in Hull v. Commissioner of Internal Revenue, 4 Cir., 87 F.2d 260, 263:

> "Estoppel is an affirmative defense, and the burden is upon the party asserting it to establish both the facts necessary to support it and the fairness of its application, and a party even knowing the facts, or in a position to know them, cannot claim the benefit of estoppel."

A motion for judgment on the pleadings must be sustained by the undisputed facts appearing in all the pleadings. All well pleaded allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which are denied are to be taken as false. Conclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment. 2 Moore, Federal Practice, 12.15. In Friedman v. Washburn Co., 7 Cir., 145 F.2d 715, 717, the court stated:

> "This motion (Rule 12(c)), of course, deals only with questions of law arising on the pleadings, and in considering it, all facts alleged by the plaintiff must be taken to be true, the question being whether upon those facts the plaintiff has *stated a cause of action.*" (Emphasis supplied.)

In view of the holding with reference to the first three questions presented, it is not necessary to pass upon the question of equitable estoppel at this time. Further light may be thrown on that question by the evidence offered in the case which no doubt will develop the factual situation in that regard.

## V.

In the light of the foregoing, it is obvious that evidence will have to be taken with reference to defendant's off-set or right of recoupment should plaintiffs sustain their position in other respects.

The motion for judgment on the pleadings under Rule 12(c) is hereby denied.