Suzanne M. BARTLEY,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 96–1155.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1996.

Decided July 23, 1997.

Douglass H. Bartley (argued), Ely, MN, for Plaintiff–Appellant.

Gary R. Allen, Paula Speck (argued), Jonathan S. Cohen, Department of Justice, Tax Division, Appellate Section, Washington, DC, Rachel I. Wollitzer, Department of Justice, Tax Division, Washington, DC, for Defendant–Appellee.

Before BAUER, ROVNER, and DIANE P. WOOD, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

■ Suzanne Bartley filed this suit on behalf of herself and all other persons and entities who paid federal taxes between 1991 and 1993,[1] seeking a refund in excess of $2.4 trillion and an injunction barring what she characterizes as the continuing over-collection of federal taxes. Bartley alleges that Congress has levied taxes for purposes other than those expressly enumerated in the Constitution and in doing so has exceeded the authority to tax and spend granted by Article I § 8.[2] Accepting the magistrate judge's recommendation in part, the district court dismissed the suit, finding that Bartley had not satisfied the jurisdictional prerequisites to a suit for refund set out in 26 U.S.C. § 7422(a) and that the request for an injunction was contrary to the Anti–Injunction Act, 26 U.S.C. § 7421(a). *Bartley v. United States,* 1995 WL 835398, 77 A.F.T.R.2d 96–798 (E.D.Wis. Dec.20, 1995).

There is a strong (and almost certainly successful) argument to be made, in view of *United States v. Butler,* 297 U.S. 1, 66, 56 S.Ct. 312, 319, 80 L.Ed. 477 (1936) ("the power of Congress to authorize expenditure of public moneys for public purposes is not limited by the direct grants of legislative power found in the Constitution"); *see also Helvering v. Davis,* 301 U.S. 619, 640–41, 57 S.Ct. 904, 908–09, 81 L.Ed. 1307 (1937); *Buckley v. Valeo,* 424 U.S. 1, 90–91, 96 S.Ct. 612, 668–69, 46 L.Ed.2d 659 (1976); *South Dakota v. Dole,* 483 U.S. 203, 207, 107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987), that Bartley's suit is legally frivolous and beyond our subject matter jurisdiction for that reason. *See Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *see also, e.g., Beauchamp v. Sullivan,* 21 F.3d 789, 790 (7th Cir.1994); *Schreiber v. Lugar,* 518 F.2d 1099, 1105 (7th Cir.1975) (Stevens, J.). However, the government has not pursued that argument, and it is in any event apparent that we lack jurisdiction over the suit for other reasons as well.

■ Bartley's failure to exhaust her administrative remedies poses the initial obstacle to this suit. As a sovereign, of course, the United States cannot be sued without its consent, and when consent is given, the terms of that consent delimit the scope of the court's jurisdiction. *See United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990); *United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986). Thus, "when Congress attaches conditions to legislation waiving the sovereign immunity of the Unit-

---

1. Given that each member of this panel would be a member of the class as Bartley's complaint describes it, we inquired at argument why we would not be obligated to recuse ourselves from consideration of this appeal. *See* 28 U.S.C. § 455(a), (b)(4), (b)(5)(i), (b)(5)(iii), (e). In response, both Bartley and the government have argued that the Rule of Necessity permits us to consider the appeal, given the near certainty that virtually every sitting federal judge will have paid federal taxes during the class period. *See United States v. Will,* 449 U.S. 200, 211–17, 101 S.Ct. 471, 479–82, 66 L.Ed.2d 392 (1980). After a review of *Will,* we agree that the Rule of Necessity permits us to consider the appeal.

2. Clause 1 of Article I, § 8 provides that "[t]he Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States." Clause 18 of the same provision empowers Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

ed States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983) (collecting cases). The Internal Revenue Code authorizes suits for refund of taxes paid to the federal government, but expressly and without exception conditions the right to sue on the taxpayer having first requested a refund from the Secretary of the Treasury:

> **No suit prior to filing claim for refund.**—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). Consistent with this provision, section 6532 of the Code further provides that no suit or proceeding for refund under section 7422(a) may be initiated until the Secretary renders a decision on the taxpayer's claim or until six months have passed since the claim was filed. 26 U.S.C. § 6532(a)(1); *see* 26 C.F.R. § 301.6402–2(a). In view of the plain language of these provisions, it is settled that unless the taxpayer has first filed a proper claim with the Internal Revenue Service, a court lacks subject matter jurisdiction over a suit for refund. *United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931); *see also, e.g., Hefti v. IRS,* 8 F.3d 1169, 1173 (7th Cir.1993) (citing *Goulding v. United States,* 929 F.2d 329, 331 (7th Cir.1991), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992)); *Martin v.*

*United States,* 833 F.2d 655, 658–59 (7th Cir.1987).[3]

Although on April 14, 1995, Ms. Bartley sent the Internal Revenue Service a letter requesting a refund on behalf of herself and the other members of the class she purports to represent, for several reasons it does not open the door to this suit. First, Bartley did not make her claim either on Form 1040X (the appropriate form for a refund of income taxes) or Form 843 (for other types of taxes). *See* 26 C.F.R. §§ 301.6402–3(a)(2), 301.6402–2(c). Second, the letter did not comply with Treasury Regulation § 301.6402–2(d), which requires a taxpayer in pursuit of a refund to make a separate claim for each taxable period. Instead, the letter simply sought a refund of an uncertain amount for all three of the tax years in question. Third, the representations Bartley set out in her letter were not made under penalty of perjury, as the regulations also require. 26 C.F.R. § 301.6402–2(b)(1); *see, e.g., Sloan v. Commissioner of Internal Revenue,* 53 F.3d 799, 800 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 252, 133 L.Ed.2d 177 (1995). Not surprisingly, the IRS itself did not treat Bartley's letter as a proper claim, but responded by letter enclosing the appropriate forms for filing a claim. So far as the record before us reveals, Bartley never completed those forms. Instead, just three days after she mailed her letter to the IRS, she filed the instant suit, in contravention of section 6532. Bartley therefore did not comply with the jurisdictional prerequisites spelled out in the Internal Revenue Code, and having failed to do so could not bring suit in her own right, let alone on behalf of a class of millions of other taxpayers (who, so far as the record discloses, have not complied with the statutory requirements either). *See Oatman v. Department of Treasury IRS,* 34 F.3d 787, 789 (9th Cir.1994); *Heisler v. United States,* 463 F.2d 375 (9th Cir.1972) (per curiam), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1358, 35

---

**3.** As we recognized in *Hefti,* the requirements reflected in section 7422(a) and the regulations promulgated pursuant to that statutory provision *serve several purposes:*

> First, they ensure that the IRS has been given adequate notice of the nature of the claim and the specific facts upon which it is predicated,

permitting administrative review and determination. Second, they give the IRS an opportunity to correct any errors that may have been made. Third, they limit the scope of the refund litigation.

8 F.3d at 1173 (citations omitted); *see also Felt & Tarrant,* 283 U.S. at 272, 51 S.Ct. at 377.

L.Ed.2d 587 (1973); *Saunooke v. United States*, 8 Cl.Ct. 327, 330 (1985); *Agron v. Illinois Bell Tel. Co.*, 325 F.Supp. 487, 488 (N.D.Ill.1970) (Marovitz, J.), *appeal dismissed as moot*, 449 F.2d 906 (7th Cir.1971), *cert. denied*, 405 U.S. 954, 92 S.Ct. 1171, 31 L.Ed.2d 231 (1972).

■ Bartley contends that it is inappropriate to require that she adhere to the formalities of the Tax Code when it is quite clear that the Internal Revenue Service will deny her claim in any event. But this kind of argument was long ago rejected by the Supreme Court in *Felt & Tarrant Mfg. Co.* There the Court of Claims had permitted a taxpayer to recover certain taxes which it claimed had been collected illegally. Before the Supreme Court, the government conceded that the taxpayer was owed a refund based on a deduction that had been improperly disallowed, and its sole objection to the judgment was that the taxpayer had not filed a claim for refund pursuing that deduction. *See* 283 U.S. at 270, 51 S.Ct. at 377. The Court of Claims had deemed it unnecessary for the taxpayer to have filed such a claim, reasoning that the Treasury had been consistently denying the very type of deduction that the taxpayer sought and thus any claim for that deduction would have been futile. *See* id. at 272, 51 S.Ct. at 377. The Supreme Court disagreed, holding that it was necessary for the taxpayer to have filed a claim as required by the statute notwithstanding the purported futility of the claim:

> The necessity for filing a claim such as the statute requires is not dispensed with because the claim may be rejected. It is the rejection which makes the suit necessary. An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and "they mark the conditions of the claimant's right." *Rock Island R.R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188. Compliance may be dispensed with by waiver, as an administrative act, *Tucker v. Alexander, supra* [275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253]; but it is not within the judicial province to read out of the statute the requirement of its words, *Rand v. United States*, 249 U.S. 503, 510, 39 S.Ct. 359, 63 L.Ed. 731 [54 Ct.Cl. 196].

283 U.S. at 273, 51 S.Ct. at 378. The Court therefore reversed the judgment entered in favor of the taxpayer below, notwithstanding its undisputed entitlement to a refund. *Felt & Tarrant* squarely addresses Bartley's argument and makes plain that we do not have the authority to excuse her failure to make a claim as required by section 7422(a), notwithstanding our certainty that the IRS ultimately will reject her claim. *See also Wiltshire v. United States*, 1983 WL 1703, *1 (E.D.Tex. Oct. 31, 1983).[4]

■ Subject to the statute of limitations (*see* 26 U.S.C. § 6511(a)), this omission is presumably one that Bartley could remedy (at least insofar as she seeks relief on her own behalf) by filing an appropriate claim, leaving her free to bring suit again at a later date; and in view of that possibility we think it important to note that we also lack jurisdiction over this suit for another, more fundamental reason: Bartley lacks standing to bring it. Article III requires that a plaintiff have a direct and concrete interest in the outcome of a suit, not merely a general interest shared equally by other members of the public. *E.g., Raines v. Byrd*, —— U.S. ——, ——, 117 S.Ct. 2312, 2316–17, 138 L.Ed.2d 849 (1997); *United States v. Hays*, 515 U.S. 737, 742–43, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74, 112 S.Ct. 2130, 2143, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–76, 102 S.Ct. 752, 757–61, 70 L.Ed.2d 700 (1982); *United States v.*

---

**4.** As we have noted, the district court went on to conclude that Bartley's separate request for injunctive relief was presumptively barred by the Anti–Injunction Act, 26 U.S.C. § 7421, and did not fall within the narrow exception to that prohibition articulated in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). We are not inclined to disagree with that conclusion, but in view of our determination below that Bartley lacks standing to maintain this suit, we need not reach the question.

*Richardson,* 418 U.S. 166, 171–74, 176–78, 94 S.Ct. 2940, 2943–45, 2946–47, 41 L.Ed.2d 678 (1974); *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

▮ In a line of cases beginning with *Massachusetts v. Mellon,* 262 U.S. 447, 486–89, 43 S.Ct. 597, 600–01, 67 L.Ed. 1078 (1923), the Supreme Court has made clear that taxpayers have standing to challenge the constitutionality of federal expenditures only in limited circumstances. *See also Flast,* 392 U.S. at 102–03, 88 S.Ct. at 1954; *Valley Forge,* 454 U.S. at 476–81, 102 S.Ct. at 761–63; *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 227–28, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974); *Richardson,* 418 U.S. at 172–74, 94 S.Ct. at 2944–45. In *Flast,* the Court articulated two requirements that the plaintiff must satisfy in order to demonstrate that she has a sufficient stake in the outcome of the litigation to satisfy the demands of Article III. The taxpayer must first establish "a logical link" between her status as a taxpayer and the kind of legislative enactment she claims is unconstitutional. Id. at 102, 88 S.Ct. at 1954. She will meet this first requirement only if she is challenging the exercise of the authority to tax and spend conferred upon Congress by Article I, § 8. *Ibid.; see Valley Forge,* 454 U.S. at 480, 102 S.Ct. at 762–63; *cf. Richardson,* 418 U.S. at 174–75, 94 S.Ct. at 2945. Second, "the taxpayer must establish a nexus between [her] status [as a taxpayer] and the precise nature of the constitutional infringement alleged." *Flast,* 392 U.S. at 102, 88 S.Ct. at 1954. "Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." Id. at 102–03, 88 S.Ct. at 1954; *see also Richardson,* 418 U.S. at 173, 175, 94 S.Ct. at 2945, 2945–46. Thus in *Flast,* the Court found it sufficient that the plaintiff taxpayers were contending that the congressionally authorized expenditures in question violated the Establishment Clause of the First Amendment, because the proscription of that constitutional provision "specifically limit[s] the taxing and spending power con-

ferred by Article I, § 8." *Id.* at 105, 88 S.Ct. at 1955; *see generally* id. at 103–06, 88 S.Ct. at 1954–56. By contrast, the Court has found challenges based on the Tenth Amendment, for example, not to meet this second requirement, because that provision reserving to the States or to the people all powers neither delegated to the United States nor foreclosed to the States imposes no specific constraint on the congressional power to tax and spend. *See Flast,* 392 U.S. at 105, 88 S.Ct. at 1955 (discussing *Frothingham*); *see also Colorado Taxpayers Union, Inc. v. Romer,* 963 F.2d 1394, 1399 (10th Cir.1992) (" 'After *Flast,* the Court consistently has adhered to the narrow exception [*Flast*] created to the general rule against taxpayer standing.' "), *cert. denied,* 507 U.S. 949, 113 S.Ct. 1360, 122 L.Ed.2d 739 (1993) (quoting *Bowen v. Kendrick,* 487 U.S. 589, 618, 108 S.Ct. 2562, 2579, 101 L.Ed.2d 520 (1988), and collecting cases); *Freedom From Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1469–70 (7th Cir.1988) (recognizing that *Flast* "established a limited exception to the general rule that federal taxpayers do not have standing to challenge federal expenditures"); *Rocks v. City of Philadelphia,* 868 F.2d 644, 649 (3d Cir.1989); *Taub v. Kentucky,* 842 F.2d 912, 916 (6th Cir.), *cert. denied,* 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988).

Bartley preliminarily argues that *Flast* is inapplicable because her suit attacks illegal taxation whereas the plaintiffs in *Flast* were challenging illegal spending. Bartley Br. 43. Nonsense. True enough, Bartley does seek a refund of taxes she claims were improperly levied and an injunction against the further collection of such taxes. But the asserted basis for this relief is the purported impropriety of the uses to which the federal government is putting its tax revenue. Bartley's observation that even if she prevailed, the government could still fund the challenged spending from other sources—borrowing, for example (Bartley Br. at 43 & n. 88)—is therefore beside the point. Victory would necessarily entail a finding that Congress has exceeded the authority to spend granted to it by Article I, § 8, as the Magistrate Judge observed. Recommendation & Order at 13

n. 3. That puts this case squarely within *Flast*'s domain, making it necessary for Bartley to satisfy *Flast*'s two-pronged standing inquiry.

Bartley's suit quite clearly fails to satisfy the second *Flast* requirement. The constitutional limitations that Bartley cites in support of her claim include Clauses 1 and 18 of Article I, § 8 (quoted at n. 2, *supra*), Clause 6 of Article I, § 9, the takings and due process clauses of the Fifth Amendment, the Ninth Amendment, and the Tenth Amendment. Bartley Br. at 43–44; Reply at 14. None of these provisions constitutes the kind of specific limitation on spending that *Flast* requires. *Flast*'s observation that the taxpayer must point to a limitation independent of the powers expressly delegated to Congress in Article I, § 8 (392 U.S. at 102–03, 88 S.Ct. at 1954) makes clear that Clauses 1 and 18 of that provision will not suffice. Clause 6 of Article I, § 9 is pertinent only because Bartley apparently finds in its admonition that "[n]o Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another" an implicit limitation on Article I, § 8, Clause 3's otherwise broad grant of power to Congress to regulate commerce with foreign nations and among the states. *See* Bartley Br. 46–47, quoting Richard A. Epstein, *The Proper Scope of the Commerce Power*, 73 Virginia L.Rev. 1387, 1395 (1987); Complaint at 710, ¶¶ 18–27. As such, this provision imposes no more of a specific limitation on the power to tax and spend than does Article I, § 8 itself. The taxpayer in *Frothingham* also invoked the due process clause of the Fifth Amendment, arguing as Bartley does (Bartley Br. at 46) that the unconstitutional expenditure of funds increased her tax liability and thereby deprived her of property without due process of law. *See* 262 U.S. at 480, 43 S.Ct. at 598. However, as the Court later observed in *Flast*, that clause "does not protect taxpayers against increases in tax liability...." 392 U.S. at 105, 88 S.Ct. at 1955. Neither does the takings clause of the Fifth Amendment (except perhaps in the most extreme case, *see* n. 5, *infra*). *See City of Pittsburgh v. Alco Parking Corp.*, 417 U.S. 369, 376–80, 94 S.Ct. 2291, 2296–97, 41 L.Ed.2d 132 (1974); *Longshore v. United States*, 77 F.3d 440, 443–44 (Fed.Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 52, 136 L.Ed.2d 15 (1996); *Heitsch v. Kavanagh*, 200 F.2d 178, 180–81 (6th Cir.1952), *cert. denied*, 345 U.S. 939, 73 S.Ct. 829, 97 L.Ed. 1365 (1953); *Curry–Bey v. United States*, 1995 WL 735781, *3 (Fed.Cl. June 22, 1995).[5] As we have noted, *Flast* rejected the Tenth Amendment as a source of any specific limitation on congressional power to tax and spend, and for comparable reasons we think the Ninth Amendment, which simply disclaims any denial or disparagement of rights not enumerated in the Constitution, fails to supply such a limitation.

Finding the notion that she and other taxpayers lack standing to challenge the propriety of the government's expenditures "outrageous," Bartley asks (as she did below), "If federal taxpayers don't have standing to seek refunds for massive over-collections of taxes, who does? Citizens who don't pay taxes? Foreign nationals? Extraterrestrials? People who don't smile in bowling alleys? Hamsters?" Bartley Br. at 37–38. But as the Supreme Court has pointed out, the fact that Bartley is unable to air her objections in a judicial forum does not mean that she has no redress at all.

> In a very real sense, the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process.... Lack of standing within the narrow confines of Art. III jurisdiction does not impair the right to assert [the citizen's] views in the political forum

---

**5.** *Cf. Henderson Bridge Co. v. City of Henderson*, 173 U.S. 592, 614–15, 19 S.Ct. 553, 561–62, 43 L.Ed. 823 (1899) (if property taxed were so far beyond protective reach of taxing municipality that property could not be said to receive any benefits whatsoever from municipal government, "[i]t is conceivable that taxation may be of such a nature, and so burdensome, as properly to be characterized a taking of private property for public use without just compensation.... But ... the case should be so clearly and palpably an illegal encroachment upon private rights as to leave no doubt that such taxation, by its necessary operation, is really spoliation under the guise of exerting the power to tax.").

or at the polls. Slow, cumbersome, and unresponsive though the traditional electoral process may be thought at times, our system provides for changing members of the political branches when dissatisfied citizens convince a sufficient number of their fellow electors that elected representatives are delinquent in performing duties committed to them.

*Richardson,* 418 U.S. at 179, 94 S.Ct. at 2947–48.

The district court was therefore correct in concluding that it lacked jurisdiction over this suit. Ms. Bartley failed to pursue a refund in the manner prescribed by the Internal Revenue Code and the pertinent Treasury Regulations, an omission that deprives us of jurisdiction; and in any event, she lacks standing to bring this suit.

AFFIRMED.