## BANCO MEXICANO DE COMMERCIO E INDUSTRIA et al. v. DEUTSCHE BANK et al.

(Court of Appeals of District of Columbia. Submitted December 15, 1922. Decided May 7, 1923.)

### No. 3838.

1. **War ⟜12—Purpose of Trading with Enemy Act was to cripple Germany and Austria, but not to confiscate property of others.**

   The original purpose of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j) was to cripple Germany and Austria-Hungary, by depriving them as far as possible of the moneys and means to carry on the war, but not to confiscate or expropriate the property of the enemy, and to respect the rights of any persons other than Germans and Austrians to money which had come into the possession of the Alien Property Custodian.

2. **War ⟜12—Neutral cannot collect unrestricted loan to enemy from property in Custodian's hands not related to debt.**

   Under Trading with the Enemy Act, § 9, subsec. (e), as amended by Act June 5, 1920, limiting the rights of those not citizens of the United States to recover debts from property of the debtor in the hands of the Alien Property Custodian, to cases where the debt arose with reference to money or property held by the Custodian, which was intended as a restriction on subsection (a), authorizing a claim by those to whom debts may be owing from an enemy whose property was conveyed to or seized by him, a loan by a neutral bank to an enemy bank, paid to an office of the latter in the United States, and thereafter deposited in another bank, from which it was taken by the Custodian, cannot be reclaimed by the neutral bank from the property seized by the Custodian, in the absence of evidence there was any showing there was a restriction on the right of the enemy bank to deposit the money loaned as it saw fit.

3. **Statutes ⟜216—Statement in committee of intention cannot be read into act.**

   A statement in the report of the house committee in charge of a bill which became Act June 5, 1920, amending Trading with the Enemy Act, § 9, subsec. (e), from which it might be inferred Congress intended to grant a right of action for all debts incurred in this country, whether the claimants be citizens or aliens, cannot be read into the act, where no such intention can be drawn from the language of the act.

4. **United States ⟜125—Suit for property in hands of Alien Custodian is in effect against the United States.**

   A suit to enforce a claim against property in hands of Alien Property Custodian is in effect a suit against the United States.

5. **United States ⟜125—Terms of permission to sue must be followed, and cause be within the consent.**

   When the United States permits itself to be sued in its own courts, the terms of the permission must be strictly followed, and the suitor's cause must come within the government's consent.

Appeal from the Supreme Court of District of Columbia.

Bill in equity by the Banco Mexicano de Commercio e Industria and others against Deutsche Bank and others to recover a loan from the proceeds of property held by the Alien Property Custodian. From a decree dismissing the bill, complainants appeal. Affirmed.

John A. Kratz, of Washington, D. C., and Henry W. W. Taft, of New York City, for appellants.

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Peyton Gordon, Adna R. Johnson, Jr., and Dean H. Stanley, all of Washington, D. C., for appellees.

Before VAN ORSDEL, Justice, and MARTIN and SMITH, Judges of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellants, plaintiffs below, filed a bill in equity in the Supreme Court of the District of Columbia under section 9, subsection (a), of the Act of Congress approved June 5, 1920 (41 Stat. 977), amending the Trading with the Enemy Act of October 6, 1917, 40 Stat. 411. The suit is to recover the sum of $500,000, with interest, from the proceeds of property seized by the Alien Property Custodian.

It is averred that plaintiff bank, for convenience hereafter referred to as the Mexican bank, is a Mexican corporation, with its principal place of business in the city of Mexico; that plaintiffs De Lima and Parkinson, citizens of the United States, and Cardona, a citizen of Mexico, are liquidators of the Mexican bank; that defendant bank, for convenience referred to as the German bank, is a German corporation, with its principal place of business in the city of Berlin, and that the German bank maintains an office in New York City for the purpose of transacting its banking business in the United States.

It is further averred that plaintiff liquidators, or their predecessors in office, by authority of the laws of Mexico and on behalf of the Mexican bank, on December 15, 1916, loaned to the German bank 500,000 gold dollars for six months at 5 per cent. interest per annum, and that the loan was made by paying the amount thereof to the agent of the German bank in New York City, who deposited it with the Guaranty Trust Company of New York to the credit of the general account which the German bank then had with that institution. The loan was made in New York City, payable there in United States gold dollars.

Averment is made of the declaration of war between Germany and the United States on April 6, 1917, the seizure of all the moneys, securities, and property of the German bank in the United States by the Alien Property Custodian, and the demand by plaintiff for payment of the $500,000, with interest, as provided in the Trading with the Enemy Act.

As a basis for the present action, it is averred that the money loaned was never transferred from the United States, but constituted a part of the balance of the deposits and securities seized by the Alien Property Custodian; that the securities and property taken over by the Custodian, after payment of all other claims and demands to which they lawfully may be applied, are sufficient to satisfy the claim of plaintiffs; that during the period between December 15, 1916, and the date when the property was seized and taken over, sufficient funds and property were kept on hand to pay and discharge all debts and obligations of the German bank in this country, including the claim of plaintiffs, and that plaintiff's claim would have been discharged at maturity, if war had not intervened.

Defendants moved to dismiss the bill for the reasons: (1) That claimants are "other than citizens of the United States;" (2) that the debt did not arise with reference to any money or property held by defendants under section 9 of the Trading with the Enemy Act as amended. From a decree dismissing the bill, this appeal was taken.

Section 9 of the Act of October 6, 1917, as amended by the Act of June 5, 1920, provides in subsection (a), among other things, as follows:

"That any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine said claimant is entitled: Provided, that no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may, at any time before the expiration of six months after the end of the war institute a suit in equity in the Supreme Court of the District of Columbia or in the District Court of the United States for the district in which such claimant resides, * * * to establish the interest, right, title, or debt so claimed."

The present case turns upon the construction of subsection (e) of section 9, as amended, which reads as follows:

"No money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or subject of any nation which was associated with the United States in the prosecution of the war, unless such nation in like case extends reciprocal rights to citizens of the United States; nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917, and as to claimants other than citizens of the United States unless it arose with reference to the money or other property held by the Alien Property Custodian or Treasurer of the United States hereunder."

It is clear from the averments of the bill that when the loan was made the German bank became the debtor of plaintiffs, and when the German bank in turn deposited the proceeds of the loan with the Guaranty Trust Company the company became the debtor of the German bank; hence in each transaction the relation of debtor and creditor was established. It must also be conceded that the Mexican bank, the plaintiff in interest, is not a citizen of the United States. The case, therefore, turns upon the single proposition whether the debt arose with reference to the money or property seized by the Alien Property Custodian.

There is nothing to indicate that the contract between the two banks placed any limitation upon the disposition which the German bank might make of the borrowed money after it was delivered to it. It was free to send the money out of the country, to deposit it to its credit in a bank, as was done, or use it in any manner that it might see fit. The transaction imposed no duty upon the German bank, either contractual, moral, or by commercial custom, except to repay the loan when due according to its terms.

[1] The original purpose of the Trading with the Enemy Act was to cripple Germany and Austria-Hungary, and to deprive them as far as possible of the money and means to carry on the war. It was, however, the expressed policy of the United States not to confiscate or expropriate the property of the enemy; and it was likewise the policy to respect the interest, right, or title of any persons other than Germans and Austrians to money, property, and claims which had come into the possession of the Alien Property Custodian. Under the original act and the various amendments thereof, the way was open to any person not an enemy, or ally of enemy, to make claim to any money or other property to which he could assert an interest, right, or title.

But there was another class of claimants protected by subsection (a), including those "to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him." It will be observed that these rights, like the rights of persons having a direct claim upon the money or property, extended to all claimants who were nonenemy persons, regardless of their nationality or place of residence, and regardless of the place where or manner in which the debt or obligation arose.

It appears, therefore, that by subsection (a) remedies were afforded persons with two classes of claims:

First, "any person not an enemy or ally of enemy claiming any interest, right, or title, in any money or other property" in the hands of the Alien Property Custodian; and, second, "any person to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof" had been taken over and held by the Alien Property Custodian.

Had the legislation stopped there the Mexican bank would have had a clear right of action under the second provision of subsection (a). But Congress, by adding subsection (e) to the amended Act of June 5, 1920, placed a limitation upon the right to recover a mere debt, limiting that right to citizens of the United States, unless the debt "arose with reference to the money or other property held by the Alien Property Custodian." The sole question presented in the present case is whether the debt held by the Mexican bank against the German bank arose with reference to the property of the latter held by the Custodian. The word "debt" is used indifferently in these provisions to designate the obligation of the debtor and the claim of the creditor.

[2] It is the contention of counsel for appellants that if subsection (e) be so construed as to limit the right of recovery by a foreign creditor to the payment of debts, secured by a lien on money in the hands of the Alien Property Custodian, or to the return of money or property

owned by the claimant, or clothed with a trust or other interest or property right in his favor, then it amounts to nothing more than a useless reiteration of paragraph (a), or the granting of a right already conceded.

We are not impressed by this construction of the statute. The foregoing argument rests upon a misconception of the nature and office of the contrasted subsections. Subsection (a) is an enabling enactment granting certain remedies to certain parties, while subsection (e) is a limiting or restrictive enactment designed to cut down the provisions of subsection (a). It is wholly incorrect, therefore, to say that subsection (e) would, under any circumstances, provide for a mere duplication of the remedy provided for in the first two lines of subsection (a), since subsection (e) does not in fact provide any remedy at all. It simply limits or restricts a remedy which is already provided for by subsection (a). Therefore the government's contention does not convert (e) into a mere duplication of (a), but makes (e) limit and restrict (a), which is plainly what Congress intended.

By the limitation placed by subsection (e) upon the right of recovery of a mere debt, limiting that right to citizens of the United States, unless the debt arose with reference to the money or other property held by the Custodian, it was intended to exclude foreign creditors from asserting claims against the moneys or property in the hands of the Custodian, unless they could assert an interest, right, or title therein, or the debt sought to be satisfied arose with reference to money or other property held by the Custodian. There are conceivable instances where in a plain case of debt, without title or lien against the money or property, the debt might arise with reference to the money or other property taken over by the Custodian. For example, if the money seized was identically the same money which furnished the basis of the debt, or if the money had been loaned and used for the specific purpose of purchasing property which had been seized by the Custodian, the debt might have such reference to the money or property as to permit of suit by an alien. But that is not this case. This is a plain case of debtor and creditor between the German and Mexican banks. The transaction has left no earmarks on any of the moneys or property in the possession of the Custodian. It follows, therefore, that the limitation contained in subsection (e) operates to deprive the plaintiffs of any right of action.

[3] Attention has been called to the report of the House committee on interstate and foreign commerce, in charge of the bill which became the Act of June 5, 1920. From the report and the communications from the Attorney General's office and the State Department, to which reference is made in the report of the committee, it might be inferred that Congress in this act had in mind the granting of a right of action for debts incurred in this country, whether the claimants be citizens or aliens. If Congress had this intention, it could have been expressed in the act; but, inasmuch as no such intention can be drawn from the language of the act, we are not authorized, from the mere statements contained in the report of the committee, either to read such an inference into the act or to presume such an intent by Congress.

[4, 5] This is in effect a suit against the United States. The rule is well established that, when the United States permits itself to be sued in its own courts, the terms of the permission must be strictly followed, and the suitor's cause must come within the government's consent. The suitor here is an alien, although not an alien enemy, and while it is to be presumed that the United States will not confiscate the property now in the hands of the Alien Property Custodian, nevertheless it is the duty of the Custodian to defend his possession according to law, until Congress determines what disposition it will make of the property.

The decree is affirmed, with costs.

Petition for appeal to United States Supreme Court allowed May 26, 1923.