In re BOWEN.

No. 21101.

District Court, E. D. Pennsylvania.

Nov. 25, 1942.

As Amended Dec. 2, 1942.

David Getz, of Allentown, Pa., Herbert S. Leman, of New York City, and Herman H. Krekstein, of Philadelphia, Pa., for Henry Baker.

Gerald A. Gleeson, U. S. Atty., and J. B. Rettew, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., Joseph Lawrence, Director, Bond and Spirits Division, Department of Justice, Harry B. DeAtley, Asst. to the Director, Julian D. Simpson, Atty., Department of Justice, and Homer R. Miller, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for the United States.

Fred B. Gernerd, of Allentown, Pa., for Trustee in Bankruptcy.

Charles M. Bolich, of Allentown, Pa., for Bankrupt.

KALODNER, District Judge.

Has the bankruptcy court jurisdiction to set aside a certificate of discharge of a bankrupt's real estate from Federal tax

liens, the certificate having been issued and recorded by the Collector of Internal Revenue under express authorization of the Commissioner of Internal Revenue, pursuant to the provisions of Section 3186(c) (4) Revised Statutes, under Section 3674(b) Internal Revenue Code, Title 26 U.S.C.A. Int.Rev.Code § 3674(b) ?[1]

The pertinent facts so far as the question posed is concerned may be briefly summarized as follows:

On August 12, 1933, the Bureau of Internal Revenue made an assessment for income taxes for 1926 against the bankrupt, Bowen, in the amount of $15,297.68, plus accrued interest of $5,883.53, or a total of $21,181.21. Notice of tax lien was filed in October, 1933, in the Office of the Prothonotary of Lehigh County, Pennsylvania, and in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania.

In May, 1935, the Bureau of Internal Revenue made an assessment against Bowen and others of $13,108.92 for distilled spirits taxes on alcohol manufactured in December, 1926. Notices of this lien were filed in May, 1935, in the Office of the Prothonotary of Lehigh County, Pennsylvania, and in the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania.

■ Through the filing of notices of these tax liens the United States of America acquired liens against all of Bowen's property, both real and personal, good against Bowen and subsequent mortgagees, purchasers in good faith, and judgment creditors. Section 3672 Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 3672, Revised Statutes Section 3186(c) and (d).

Subsequently in September, 1935, one Henry Baker obtained a judgment against Bowen in the Court of Common Pleas of Lehigh County in the sum of $79,240.42. Since the notices of tax liens above referred to were filed prior to Baker's judgment, the latter was of course inferior to both of the Federal tax liens.

At the time of the filing of the tax liens and the entry of Baker's judgment, Bowen's principal asset was the ground and building at 809–11–13 Hamilton Street, Allentown, Lehigh County, Pennsylvania. Bowen owned other properties which, while they are not concerned with the issue here, it may be stated, were mortgaged for more than their value.

In December, 1938, when the Hamilton Street property was still Bowen's principal asset, Baker in compliance with Treasury Decision 4446[2] filed an application for a certificate of discharge from the Hamilton Street property of the Federal tax liens above mentioned with the Collector of Internal Revenue.

The application listed purportedly outstanding liens against the property, and included two appraisals by independent realty appraisers, one at $308,000 and the other at $314,600.

Baker paid $150 as a consideration for the discharge.

On March 10, 1939, following an investigation of Baker's application, the Commissioner authorized the Collector to issue the certificates of discharge.

The certificates were issued and filed of record April 14, 1939, with the Prothonotary of Lehigh County and the Clerk of the United States District Court, thereby extinguishing the Federal tax liens as to the Hamilton Street property, under Section 3675 of the Internal Revenue Code, Section 3675, 26 U.S.C.A. Int.Rev.Code.

Section 3675 reads as follows:

"§ 3675. Effect of certificates of release or partial discharge

---

[1] Section 3674(b) provides as follows:
"§ 3674. Partial discharge of property

*       *       *       *       *

"(b) Part payment. Subject to such regulations as the Commissioner, with the approval of the Secretary, may prescribe, the collector charged with an assessment in respect of any tax may issue a certificate of discharge of any part of the property subject to the lien if there is paid over to the collector in part satisfaction of the liability in respect of such tax an amount determined by the Com-

missioner, which shall not be less than the value, as determined by him, of the interest of the United States in the part to be so discharged. In determining such value the Commissioner shall give consideration to the fair market value of the part to be so discharged and to such liens thereon as have priority to the lien of the United States. 53 Stat. 449."

[2] Treasury Decision 4446 prescribes the type of application to be filed under Section 3674(b).

"A certificate of release or of partial discharge issued under this subchapter shall be held conclusive that the lien upon the property covered by the certificate is extinguished. 53 Stat. 450."

On November 8, 1939, almost seven months after the filing of the certificates of discharge, Bowen filed a voluntary petition in bankruptcy.

In August, 1940, the Hamilton Street property was sold at public sale by the trustee in bankruptcy for $457,500 less broker's commission.

In January, 1941, the government filed a petition with the referee to set aside the discharge of the lien of the distilled spirits tax and to pay the lien in the order of its priority out of the proceeds of the sale of the property.

Subsequently, the government filed an amended petition in which it sought reinstatement of both the income tax lien and the distilled spirits tax lien.

The government based its petitions for vacation of the recorded discharges of the liens on the ground that the Commissioner of Internal Revenue was misled by the application of Baker for the certificates of discharge (1) as to the value of the Hamilton Street property and (2) as to the actual amount of the indebtedness on various prior judgment liens.

The referee held hearings on January 31, 1941, and February 14, 1941, on the government's petitions, and on December 3, 1941, entered orders allowing the income tax and distilled spirits tax claims, and further ordering that the discharge of the liens "be stricken off, the liens reinstated" and the claims as to distilled spirits and income taxes "impressed as a lien upon the funds in the hands of the trustee in bankruptcy in said estate and directed to be paid out of said funds in its order of priority."

Baker thereupon filed a petition for review of the referee's orders, raising the issue posed at the outset of this opinion.

In discussing the issue here presented, it must be kept in mind that there was no dispute "as to the amount or legality" of the Federal tax liens. The controversy hinged in effect on the government's petition to reinstate the priority over other judgments which the Federal tax liens had once held, and which priority had been surendered when the tax liens were discharged. Determination that the tax liens cannot be reinstated means, of course, that the government's claims for the income taxes and the distilled spirits taxes will be subordinated to the existing judgment liens, instead of enjoying their once-held lien status priority to these judgments.

Both Baker and the government have argued very vigorously in their respective briefs what might be described as the "merits" of the controversy.

The government here, as in the proceedings before the referee, contends that "* * * Baker's incorrect and incomplete statements * * * amount to constructive fraud". Baker denies the charge of constructive fraud, and contends that the discharge had been granted after complete investigation, and that the government "* * * not only had equal access to all material facts but had actual knowledge of such facts as are now said to have been withheld".

It is unnecessary for me to express any opinion at this time as to the "merits" of the controversy, in view of my conclusion that the referee was without jurisdiction to set aside the certificates of discharge from the Federal tax liens issued and recorded by the Collector of Internal Revenue under the express authorization of the Commissioner of Internal Revenue in consonance with Section 3674(b).

As was ruled in Arkansas Corporation Commission et al. v. Thompson, Trustee, 313 U.S. 132, 138, 139, 61 S.Ct. 888, 85 L. Ed. 1244, the sole source of the jurisdiction and powers of the bankruptcy court with reference to tax claims is Section 64, sub. a of the Bankruptcy Act, 11 U.S. C.A. § 104, sub. a. That section provides:

"* * * The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates * * * shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or any State * * *: Provided, * * * That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the [bankruptcy] court."

In the Arkansas Corporation Commission case, supra, the Supreme Court of the United States held (page 142 of 313 U. S., page 891 of 61 S.Ct., 85 L.Ed. 1244): "* * * What section 64, sub. a (4) relates to is 'taxes legally due and owing by

the bankrupt.' And what that section further provides is that 'in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court; * * *.' "

Discussing the meaning of Section 64, sub. a (4) and the Congressional intent, the Supreme Court stated (page 145 of 313 U. S., page 892 of 61 S.Ct., 85 L.Ed. 1244): "* * * But there is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies. * * * Nothing in the language of the Act requires such a construction."

In the Arkansas Corporation Commission case, the District Court sitting in bankruptcy reversed the valuation of an order which had been fixed pursuant to the state law as the basis for a state tax by the Arkansas Corporation Commission, a state agency vested with general and complete supervision over the valuation and assessment of public utilities and all other property. As stated by Mr. Justice Black in delivering the opinion of the court, the case raised "questions concerning the right and power of a federal bankruptcy court to revise and redetermine for state tax purposes the property value of a railroad * * * in reorganization under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, the state * * * having already determined such value through its own taxing officials and in accordance with the procedure prescribed by valid state legislation."

The District Court had ruled that Section 64, sub. a (4) gave the bankruptcy court power to hold a new hearing in order to set its own value on the property, regardless of the value fixed by the state by its expert and specially constituted quasi-official agency.

The rationale of the Arkansas Corporation Commission case certainly applies in the instant case.

The referee here has vacated the government's discharge of the property from the tax liens after the Collector, under the express authorization of the Commissioner, and following thorough investigation and pursuant to the provisions of Section 3674 (b), had discharged the liens.

■ It is highly significant that Section 3675 expressly provides in language which is clear and unequivocal that "A certificate of release or of partial discharge issued under this subchapter shall be held *conclusive* that the lien upon the property covered by the certificate is extinguished." (Emphasis supplied.)

Section 3675 certainly expresses the Congressional intent that the issuance of the certificate of discharge shall be conclusive, without any qualification and without recourse to any other agency, administrative or judicial, to vacate such action.

I have been unable to find any other instance in which Congress has so firmly expressed itself with reference to the administration of our tax laws. For example, under Section 1106(b), Revenue Act of 1926, 44 Stat. 9, 113, 26 U.S.C.A. Int.Rev. Acts page 318, (discussed in Helvering v. Kehoe, 309 U.S. 277, 278, 60 S.Ct. 549, 84 L.Ed. 751), it was provided that where there had been a closing agreement between a taxpayer and the Commissioner with reference to any tax or penalty "* * * that such determination and assessment shall be final and conclusive, then (*except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made*) * * * and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States." (Emphasis supplied.)

There is no such reservation in Section 3675.

In Steinbrecher v. Toman, 7 Cir., 105 F.2d 704, page 708, the court held: "* * * the courts will not set aside, or interfere with, the exercise by taxing authorities of their power to assess property, nor review the methods by which, in the exercise of such power, they arrive at the value of property for tax purposes, except in cases clearly falling within recognized limitations of that power [citing cases]."

■ Of course, the converse of that proposition as exemplified in the instant case is also true. If the courts cannot set aside or interfere with the exercise by the taxing authorities of their powers to assess, nor review the methods by which in the exercise of their power they arrive at the assessment, certainly they cannot review the methods or the action of the taxing power in vacating a tax lien.

■ It has been held that where the Commissioner, acting under legislative authority, determines that taxes have been

erroneously collected and that the taxpayer is entitled to a refund, the Commissioner is acting in a quasi-judicial rather than a ministerial capacity. United States v. Detroit Steel Products Co., D.C., 20 F.2d 675, 677.

In this connection, it must be kept in mind that the Supreme Court of the United States, in the Arkansas Corporation Commission case, supra, stressed the fact that the Arkansas Corporation Commission was not acting ministerially, but "on the contrary, it is a quasi-judicial agency entrusted with wide responsibilities in connection with the general tax system of the state."

In the case of In re Gould Mfg. Co., D. C., 11 F.Supp. 644, 648, it was held under Section 64 sub. a of the Bankrupt Act, 11 U.S.C.A. § 104 sub. a:

" * * * when an initial assessing functionary, upon ample evidence, makes a determination within the powers granted by law, his or its judgment and discretion thereon, honestly exercised, is not subject to *substitution* or mere *revision* by any *judicial tribunal.* What is meant is that, ordinarily, judgments of assessors, upon appraisement or assessment of values, are not subject to revisory judgments of courts. They are not subject to judicial power to apply either the same rule, or, optionally, a different rule with a resultant, in whole or in part, to substitute the application judicially to the same subject-matter, which was actually or potentially before the initial statutory assessing, or the statutory reviewing, functionary. * * *

"Matters of common and settled experience in the assessment and levy of taxes, and the uniform insistence, both in the states and in the nation, upon certainty of imposition and inescapability of obligation to pay, alone raise the serious question whether in the Bankruptcy Act there is any expression of purpose to permit the courts, *which cannot discharge a tax and are bound to pay it in full, if legal, nevertheless to revise, mitigate, or wipe it out.*" (Emphasis supplied.)

██ ██ In Metropolitan Life Insurance Co. v. United States, 6 Cir., 107 F.2d 311, it was held that where the Federal government's lien for taxes once attaches it may be lifted only as provided by statute; and further, that the jurisdiction of the Federal District Courts is limited not only by the Constitution but also by acts of Congress. Said the court (page 314 of 107 F.2d):

"The United States as a sovereign may be sued only with its consent. It follows that the Congress has the power to prescribe not only the methods by which and the conditions under which tax liens on real estate may be released but also to limit the right to sue therefor and no suit may be maintained against the United States for such purpose unless strictly within the terms of the Statute (Jud.Code § 24(20), 28 U.S.C.A.· § 41(20), under which consent is given. Banco Mexicano, etc. v. Deutsche Bank, 53 App.D.C. 266, 289 F. 924, affirmed in 263 U.S. 591, 44 S. Ct. 209, 68 L.Ed. 465; Rand v. United States, 249 U.S. 503, 510, 39 S.Ct. 359, 63 L.Ed. 731; Price v. United States & Osage Indians, 174 U.S. 373, 379, 19 S.Ct. 765, 43 L.Ed. 1011; United States v. Michel, 282 U.S. 656, 660, 51 S.Ct. 284, 75 L.Ed. 598; Tucker v. Alexander, 275 U.S. 228, 232, 48 S.Ct. 45, 72 L.Ed. 253.

*"The right of the plaintiff to a release of the lien here in question is purely statutory and the jurisdiction of the Court may not be enlarged by implication.* The question to be determined is not what binding effect the power of sale conferred by the mortgage had on subsequent lienors, *and it matters not what may seem to the Court equitable in the premises.* Appellant's action was predicated on the theory that the United States had some sort of lien on the premises which it was seeking to lift in accordance with the terms of the Statute. *Since the statute does not expressly or impliedly give the Court power to discharge the lien by decree, the only statutory method by which it may be done is sale.* * * *\*"* (Emphasis supplied.)

It is the government's contention that the bankruptcy court has jurisdiction to vacate the discharge of the tax liens and to reinstate them, under the general equity powers of the United States District Court, in view of the referee's finding "that the Commissioner of Internal Revenue was misled into granting these discharges by the false representations in Baker's application and his failure to reveal matters that were within his knowledge".

██ However, it is well settled that "The District Court does not possess the general power to entertain a suit in equity,

72

and, unless the bankrupt act has conferred upon it jurisdiction to entertain a plenary suit in equity, such a suit cannot be maintained". Smith et al. v. Chase National Bank of the City of New York, 8 Cir., 84 F.2d 608, 615.

Quoting from the same opinion (page 615 of 84 F.2d): "In Chauncey et al. v. Dyke Bros. et al. [8 Cir.], 119 F. 1, 3, this court, speaking through Judge Thayer, said: 'The bankrupt court had no rights to assume jurisdiction of a controversy between third parties, in which the trustee was not concerned, and decide whose claim was paramount in equity, merely because the claimants happened to be creditors of the bankrupt estate, or merely because the liens affected a part of the bankrupt's property. The bankrupt act confers no such authority.' "

In the instant case, the government frankly concedes that the action of the referee in vacating the discharge of the tax liens is without precedent.

I have made an exhaustive investigation and have failed to find a single case where there was a vacation of a discharge of a lien whether in bankruptcy proceedings or otherwise.

In conclusion, then, I find that the bankruptcy court is without jurisdiction in the matter, and that the referee erred in vacating or setting aside the discharge of the Federal tax liens.

Accordingly, the action of the referee is reversed.