Walter A. WILLIAMS, Plaintiff and
Cross-Defendant,

United States of America, Garnishee,

v.

Essye B. WILLIAMS, Defendant
and Cross-Plaintiff.

Civ. No. K–76–248.

United States District Court,
D. Maryland.

Dec. 27, 1976.

Jervis S. Finney, U. S. Atty., Thomas G. Banjanin, Asst. U. S. Atty., Baltimore, Md., for garnishee.

Herbert Myerberg, Bruce A. Kaufman, Baltimore, Md., for defendant and cross-plaintiff.

FRANK A. KAUFMAN, District Judge.

█ This case grows out of a divorce proceeding instituted in a Maryland court by the husband, seeking a decree of divorce *a vinculo matrimonii.* Eventually, however, the wife prevailed upon her cross-bill of complaint and won a decree of divorce and an award of alimony. Thereafter the wife, seeking to enforce her alimony award, named the United States as garnishee in a series of writs of attachment filed in and issued out of the state court. In so doing,

the wife attempted to reach the substantial retirement income which her husband, a retired warrant officer, receives from the United States. The United States has removed this case to this Court. The wife contends that such removal is not soundly based and that this case should be remanded to the state court.[1]

Until very recently, the doctrine of sovereign immunity barred a garnishment proceeding against the United States. *See Arnold v. United States,* 331 F.Supp. 42, 43 (S.D.Tex.1971); *Clarise Sportswear Co. v. U & W Manufacturing Co.,* 223 F.Supp. 961 (E.D.Pa.1963). Recently, however, the Congress has enacted The Social Services Amendments of 1974, Pub.L. 93–647, § 101(a), 88 Stat. 2357, codified in part as 42 U.S.C. § 659 (Supp. IV, 1974), which provides:

> Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States (including any agency or instrumentality thereof and any wholly owned Federal corporation) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

With the shield of sovereign immunity thus lowered, Mrs. Williams sought in the state court, and continues to seek in this Court, to garnish her husband's retirement pay.

The Government claims removal jurisdiction under both (1) a combination of 28 U.S.C. § 1441(a)[2] and either 28 U.S.C.

---

1. The wife has styled her pleading a motion to dismiss petition for removal. Removal has been effected by the giving of notice and by the Government's filing of a copy of the petition for removal with the Clerk of the state Court pursuant to 28 U.S.C. § 1446(e). Therefore, this Court herein treats Mrs. Williams' said motion as one seeking remand under 28 U.S.C. § 1447(c).

2. 28 U.S.C. § 1441(a) provides:
   Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

§ 1331(a)[3] or § 1346(a)(2)[4] and (2) 28 U.S.C. § 1442(a)(1).[5] Section 1441 authorizes removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction \* \* \*." The Government alleges original jurisdiction alternatively under 28 U.S.C. § 1331(a) or § 1346(a)(2) depending upon whether or not the amount in controversy exceeds $10,000. However, original jurisdiction does not exist, and therefore removal jurisdiction does not exist under 28 U.S.C. § 1441(a) taken in combination with either § 1331(a) or § 1346(a)(2), because this case does not "arise under" 42 U.S.C. § 659 or any other provision of federal law, within the meaning of section 1331(a) and also is not "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department" as required by § 1346(a)(2). In *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), Mr. Justice Cardozo wrote with regard to 1331(a):

> How and when a case arises "under the Constitution or laws of the United States" has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. *Starin v. New York,* 115 U.S. 248, 257, [6 S.Ct. 28, 29 L.Ed. 388;] *First Nat. Bank v. Williams,* 252 U.S. 504, 512, [40 S.Ct. 372, 64 L.Ed. 690.] The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Ibid.;

*King County v. Seattle School Dist.,* 263 U.S. 361, 363, 364, [44 S.Ct. 127, 128, 68 L.Ed. 339]. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto (*New Orleans v. Benjamin,* 153 U.S. 411, 424, [14 S.Ct. 905, 38 L.Ed. 764;] *Defiance Water Co. v. Defiance,* 191 U.S. 184, 191, [24 S.Ct. 63, 48 L.Ed. 140;] *Joy v. St. Louis,* 201 U.S. 332, [26 S.Ct. 478, 50 L.Ed. 776;] *Denver v. New York Trust Co.,* 229 U.S. 123, 133, [33 S.Ct. 657, 57 L.Ed. 1101]), and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. (*Tennessee v. Union & Planters' Bank,* 152 U.S. 454, [14 S.Ct. 654, 38 L.Ed. 511;] *Louisville & N. R. Co. v. Mottley,* 211 U.S. 149, [29 S.Ct. 42, 53 L.Ed. 126;] *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, [33 S.Ct. 410, 57 L.Ed. 716;] *Taylor v. Anderson,* 234 U.S. 74, [34 S.Ct. 724, 58 L.Ed. 1218.]) \* \* \* [299 U.S. *supra* at 112–13, 57 S.Ct. at 97.]

A suit does not arise under a law renouncing a defense, though the result of the renunciation is an extension of the area of legislative power which will cause the suitor to prevail. Let us suppose an amendment of the Constitution by which the states are left at liberty to levy taxes on the income derived from federal securities, or to lay imposts and duties at their pleasure upon imports and exports. If such an amendment were adopted, a suit to recover taxes or duties imposed by the state law would not be one arising under the Constitution of the United States, though in the absence of the amendment the duty or the tax would

---

**3.** 28 U.S.C. § 1331(a) provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

**4.** 28 U.S.C. § 1346(a)(2) provides in part:

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department \* \* \*.

**5.** 28 U.S.C. § 1442(a)(1) is set forth at p. 6 *infra.*

fail. \* \* \* [299 U.S. *supra* at 116, 57 at 99.][6]

In *Morrison v. Morrison,* 408 F.Supp. 315 (N.D.Tex.1976), a wife sought in a suit instituted originally in federal district court to reach retirement payments due from the Air Force to her husband to satisfy child support obligations. Noting (at 317) the removal of "the barrier of sovereign immunity" by 42 U.S.C. § 659, the Court held jurisdiction lacking under a combination of section 659 and 28 U.S.C. § 1331(a), citing, *inter alia,* to *Gully,* and also lacking under a combination of section 659 and 28 U.S.C. § 1346(a)(2). With regard to the latter, Judge Woodward wrote (at 317) that "a statute which waives sovereign immunity is not one upon which an action can be founded. Rather, a statute upon which a claim can be founded is one which expressly or impliedly creates a right to relief. \* \* \* Section 659 in no way purports to establish a federal right to garnishment."

■ In *West v. West,* 402 F.Supp. 1189 (N.D.Ga.1975), eight wives brought suit in state courts to garnish monies due from the United States to their former husbands. Removal by the Government to federal district court was held inappropriate under both 28 U.S.C. § 1441(a) combined with 28 U.S.C. § 1346, and under 28 U.S.C. § 1442(a)(1). *See also* to the same effect, as to section 1441 combined with section 1346(a)(2), *Wilhelm v. United States Dep't of Air Force,* 418 F.Supp. 162 (S.D.Tex. 1976). This Court agrees with the views expressed in *Wilhelm, Morrison* and *West*

as to section 1441. The applicability of section 1442(a)(1) raises, however, different and more complex issues.[7]

■ Section 1442 provides in part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.[8]

In *West,* Judge O'Kelley wrote (at 1190–91):

In *New Jersey v. Moriarity,* 268 F.Supp. 546, 555 (D.N.J.1967), the court traced the development of this section:

The series of enactments culminating in Section 1442(a) were initially designed to protect Federal revenue officers from prosecution or civil suit in State court for violation of State law. (Citations omitted.) Removal was restricted to cases where the officers [sic] defense was that no personal liability, civil or criminal, could be attached to his action, since he was only performing his Federal duties.

---

**6.** *See also McCorkle v. First Pennsylvania Banking & Trust Co.,* 459 F.2d 243 (4th Cir. 1972) (Sobeloff, J.); *Barlow v. Marriott Corp.,* 328 F.Supp. 624 (D.Md.1971).

**7.** In *Wilhelm v. United States Dep't of Air Force,* 418 F.Supp. *supra* at 165, the Court wrote:

Although lack of original jurisdiction precludes removal to federal court under 28 U.S.C. § 1441, it does not necessarily follow that this Court is presently without jurisdiction. In some instances including certain actions brought in state court and removed under 28 U.S.C. § 1442(a)(1), removal jurisdiction is broader than original jurisdiction. C. Wright, Federal Courts § 38 (2d ed. 1970).

**8.** A garnishment proceeding is "[a] civil action" within the meaning of section 1442(a)(1). *Allen v. Allen,* 291 F.Supp. 312 (S.D.Iowa 1968). *See Randolph v. Employers Mutual Liability Ins. Co.,* 260 F.2d 461 (8th Cir. 1958); *Stoll v. Hawkeye Casualty Co.,* 185 F.2d 96 (8th Cir. 1950); *Moore v. Sentry Ins. Co.,* 399 F.Supp. 929 (S.D.Miss.1975); *Swanson v. Sharp,* 224 F.Supp. 850 (D.Alaska 1963); *Clarkin v. Worthley,* 114 F.Supp. 877 (W.D.Mo.1953); *Robinson v. Fort,* 112 F.Supp. 242 (E.D.Mo. 1953). Earlier cases to the contrary are referred to in certain of those cases. *See, e. g. Moore Sentry Ins. Co.,* 399 F.Supp. *supra* at 930.

Subsequent amendments have, from time to time, enlarged the class of Federal officers and employees who might claim protection, but these additions left unchanged the basic theory and purpose of this removal privilege: that the officer was entitled to—and the interest of national supremacy required—his protection in actions brought against him which attacked and threatened him with personal liabilities or penalties.

*See Willingham v. Morgan,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55 (5th Cir. 1975).

Viewed in light of its purpose, the court is convinced that section 1442(a)(1) is inapplicable in the instant cases for two reasons. First, since these actions do not purport to subject any federal officer to a personal liability or penalty, they are not actions "against" a federal officer within the purview of section 1442(a)(1). *New Jersey v. Moriarity, supra.* While a federal officer might be named as a nominal defendant in an action under 42 U.S.C. § 659, he will not be subjected to personal liability as the sole purpose of the action is to reach federal monies due and owing to the defendant. Second, even if "against" a federal officer, still the actions do not purport to penalize the officer for official acts taken in the past, nor do they attempt to enjoin future official acts. Accordingly, this court concludes that the actions are not within the court's section 1442(a)(1) removal jurisdiction. [Footnote omitted.]

In *Wilhelm,* Judge Bue held that jurisdiction under section 1442(a)(1) to remove a proceeding to garnish military retirement pay did not exist, writing (at 165–66):

There is a distinct trend to restrict and limit the removal jurisdiction of the federal courts. C. Wright, Federal Courts § 38 (2d ed. 1970). If the right to remove is doubtful, the case should be remanded. *Lance International Inc. v. Aetna Casualty and Surety Co.,* 264 F.Supp. 349, 356 (S.D.N.Y.1967). *See also* 1A MOORE, FEDERAL PRACTICE ¶ 0.157 [1.–3] (1976). The rationale or purpose of § 1442 is to protect federal officers and federal agencies against actions brought which threatened personal liabilities or penalties. *State of New Jersey v. Moriarity, supra,* 268 F.Supp. at 555; *West v. West, supra,* 402 F.Supp. at 1191. *See also Gay v. Ruff,* 292 U.S. 25, 32, 54 S.Ct. 608, 78 L.Ed. 1099 (1934) (suit against federal receiver held not removable). Although the Air Force is the nominal defendant in this action, there is no real collision of interests or substantial controversy between the plaintiff and this defendant. The Court has concluded that no policy or purpose will be served by construing § 1442(a)(1) in the present context to permit the removal of these domestic relations disputes to federal court. A broader construction of this provision would effect a profound alteration in the relationship between federal and state courts.

*See also Golightly v. Golightly,* 410 F.Supp. 861, 862 n. 2 (D.Neb.1976).

Insofar as section 1442(a)(1) is concerned, this Court respectfully disagrees.

In *State of North Carolina v. Carr,* 386 F.2d 129 (4th Cir. 1967), an FBI agent, who had refused, when called as a witness in a civil state court trial, to answer questions in accordance with a federal regulation and an order of the Attorney General of the United States, had been cited for contempt by the state trial court. The Fourth Circuit in a per curiam opinion, holding that the case was moot, nevertheless stated clearly that the case had been appropriately removed to federal district court pursuant to 28 U.S.C. § 1442(a)(1). In so doing, the opinion observed (at 131):

The purpose of the statute is to take from the State courts the indefeasible power to hold an officer or agent of the United States criminally or civilly liable for an act allegedly performed in the execution of any of the powers or responsibilities of the Federal sovereign. Neither immunity nor impunity is guaranteed the alleged offender; the statute

merely transfers his trial to the Federal courts. Insistence upon the right of removal has been declared essential to the integrity and preeminence of the Federal government within its realm of authority. The reasons for the statute are so apparent, and were so clearly expounded, with its history carefully treated, in *State of Tennessee v. Davis,* 100 U.S. 257, 262, 25 L.Ed. 648 (1879), that we have no occasion to reiterate here the necessity for its rigid enforcement.

To repeat, the central and grave concern of the statute is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in any but a Federal forum. Thus the statute looks to the substance rather than the form of the state proceeding; this is the reason for the breadth of its language. Accordingly, the applicability of the statute to the present case is perfectly apparent. By citing Carr for contempt, the State court attempted to subject him to incarceration until such time as he complied with the Court's order and thus disobeyed the directive of his superior officers. A statute designed to permit Federal officers to perform their duties without State interference clearly applies to such a situation, regardless of the label the State chooses to affix to its action.

Subsequently, in *Willingham v. Morgan,* 395 U.S. 402, 404–07, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969),[9] Mr. Justice Marshall, speaking for the Supreme Court, reviewed the history of section 1442(a)(1). Therein (at 404–05, 89 S.Ct. at 1815), in rejecting the Tenth Circuit's view that the test for removal under section 1442(a)(1) is " 'much narrower' than the test for official immunity" the Justice noted:

[The Government] argues that the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. On this view, the test for removal should be broader, not narrower, than the test for official immunity. We agree.[10]

Mr. Justice Marshall also wrote (at 406–07, 89 S.Ct. at 1815):

The purpose of all these enactments is not hard to discern. As this Court said nearly 90 years ago in *Tennessee v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1880), the Federal Government "can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members."

9. In *Willingham,* a prisoner in a federal penitentiary alleged that the warden and chief medical officer had "inoculated him with a deleterious foreign substance and assaulted, beaten and tortured him." 395 U.S. *supra* at 403, 89 S.Ct. at 1814.

10. That language was seemingly not included by accident in Mr. Justice Marshall's opinion. Concurring (at 410, 89 S.Ct. at 1817), Mr. Justice Black wrote:

I concur in the judgment of the Court and in the opinion except for one portion which is quoted below in answer to the Government's contention:

"It argues that the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. On this view, the test for removal should be broader, not narrower, than the test for official immunity. We agree."

I see no necessity in this case for comparing the breadth of the law authorizing removal of cases from state to federal courts with the test "for official immunity." This case raises no question about official immunity from lawsuits for conduct of a government employee. Moreover, the difference between the breadth of a right to remove and a right to claim immunity is purely conceptual and cannot be measured by any means that I know about.

I would therefore eliminate the above-quoted statement from the Court's opinion.

For this very basic reason, the right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act "under color" of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a "federal interest in the matter," *Poss v. Lieberman,* 299 F.2d 358, 359 (C.A.2d Cir.), cert. denied, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962), the very basic interest in the enforcement of federal law through federal officials.

Viewed in this context, the ruling of the court below cannot be sustained. The federal officer removal statute is not "narrow" or "limited." *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts. The position of the court below would have the anomalous result of allowing removal only when the officers had a clearly sustainable defense. The

suit would be removed only to be dismissed. Congress certainly meant more than this when it chose the words "under color of . . . office." In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).[11]

The purpose of section 1442(a)(1) is to enable the Government to answer in federal rather than in state court for any alleged failure of action or nonaction in the performance of duties by federal officers. In the within case, the Government has raised substantial issues under Maryland law with regard to the duty of the federal officers in control of the pay sought to be garnished. The Government has also stated in a legal memorandum filed in this case that once those issues are settled, only rarely would it seek to remove such actions in the future.[12] Thus the spectre raised by

11. Section 1442 has been broadly construed. *See Texas ex rel. Falkner v. National Bank of Commerce,* 290 F.2d 229, 231 (5th Cir. 1961) (Tuttle, C. J.); *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.,* 358 F.Supp. 841 (S.D.N.Y.1973); *United States v. Penney,* 320 F.Supp. 1396 (D.D.C.1970).

12. This Court, on October 29, 1976, filed the following Orders pursuant to Maryland's certification statute:

MEMORANDUM AND ORDER

For reasons which will be set forth in a written opinion which will shortly be filed by this Court, the garnishor's motion to remand this proceeding to the state court from which it was removed is denied. By Order of this Court bearing *even date herewith, three questions of* Maryland state law which may be controlling herein have been certified to the Court of Appeals of Maryland. This Court expects to hold this case *sub curia* and in *status quo* pending the response of the Court of Appeals of Maryland.

The Clerk is directed to send copies of this Memorandum and Order to counsel of record in this case, as well as to Leonard A. Orman,

Esq., who has indicated that he may shortly be entering the case as counsel for Mr. Williams. It is so ORDERED, this 29th day of October, 1976.

(s) Frank A. Kaufman
United States District Judge
ORDER OF CERTIFICATION

It appearing that there are involved in these proceedings certain questions of law of the State of Maryland which may be determinative of the cause now pending herein as to which there is no controlling precedent in the decisions of the Court of Appeals of Maryland, it is this 29th day of October, 1976, by the United States District Court for the District of Maryland,

ORDERED, that in accordance with the provisions of Courts and Judicial Proceedings Article, Sections 12–601 to 609, Maryland Code (1974, 1975 cum. supp.), the following Statement of Facts and Questions of Law shall be forwarded by the Clerk of this Court, under official seal, to the Court of Appeals of Maryland.

*Statement of Facts*

On March 3, 1972, Mr. Walter A. Williams initiated divorce proceedings in Circuit Court

counsel for Mrs. Williams of a flood of similar removal cases would not appear likely. However, if the worst fears of such counsel are realized, it would then be up to the Congress, and not this federal district court, to limit removal jurisdiction under section 1442(a)(1) when section 659 is involved. Some courts as discussed *supra* and *infra,* have concluded that the Congress has in fact limited removal under section 1442(a)(1) when section 659 is involved.

No. 2, of Baltimore City. On July 31, 1972, Mrs. Essye B. Williams filed a Cross-Bill of Complaint for divorce in the same court.

On October 9, 1975, the Circuit Court No. 2, of Baltimore City entered a monetary judgment for alimony arrearages as of August 28, 1975, in favor of Mrs. Essye B. Williams, in the amount of $10,427.00.

On November 13, 1975, the Circuit Court No. 2, of Baltimore City entered a Decree of Divorce in favor of Mrs. Essye B. Williams. This Decree of Divorce *inter alia* preserved the monetary decree of October 9, 1975.

In order to effect collection on this monetary judgment entered October 9, 1975, Mrs. Essye B. Williams on January 16, 1976, served a Writ of Attachment on the United States of America to attach U. S. Army retired pay or any other funds in its possession pursuant to 42 U.S.C. § 659. Mr. Walter A. Williams is retired from the U. S. Army and receives monthly military retirement pay which he is entitled to receive for life.

The United States Army responded to the Writ of Attachment by confessing the amount of Mr. Williams' retirement pay and by claiming the Maryland State exemption for wages provided in Annotated Code of Maryland, Commercial Law Article Sections 15–601, 602. The United States also alleged that Writs of Attachment would have to be filed monthly in accordance with Sections 15–601, 602. Mrs. Williams disputed the applicability of the Maryland State exemption and the necessity of monthly writs under this section of the Annotated Code.

Thereupon, the United States of America filed a Petition to Remove the instant case to the U. S. District Court for the District of Maryland, on February 19, 1976. Mrs. Williams filed a Motion to Remand on the grounds that the federal court was without removal jurisdiction. The United States District Court for the District of Maryland, Frank A. Kaufman, Judge, determined that federal removal jurisdiction exists in the instant case and denied the Motion to Remand.

### Questions Certified

1. Is federal military retirement pay which is paid to retirees of the Armed Services of the United States of America, "wages" within the meaning of Annotated Code of Maryland, Commercial Law Article Section 15–601?

Once again, most respectfully, this Court disagrees.

The opinion in *Bolling v. Howland,* 398 F.Supp. 1313 (M.D.Tenn.1975) involves two cases "consolidated for consideration by the Court, *sua sponte,* of the jurisdictional basis for a suit in the Federal district court for garnishment of wages or other remuneration for employment pursuant to 42 U.S.C. § 659" (398 F.Supp. *supra* at 1313).[13] Judge Morton reviewed certain parts of the legis-

2. If federal military retirement pay which is paid to retirees of the Armed Services of the United States of America is "wages" within the meaning of Annotated Code of Maryland, Commercial Law Article Section 15–601, do the exemptions from garnishment provided in Section 15–602 apply to federal military retirement pay where the underlying obligation is for alimony?

3. Must separate Writs of Attachment by way of garnishment be filed each month pursuant to Annotated Code of Maryland, Commercial Law Article Sections 15–601, 602 in order to attach federal military retirement pay which is paid to retirees of the Armed Services of the United States of America?

The phrasing of the certified questions is not intended to restrict the consideration of the problems involved and the issues as the Court of Appeals of Maryland may perceive them.

FURTHER ORDERED, that pursuant to Maryland Rule 896(a)(iv), that the United States of America shall be treated as the appellant in the certification process.

(s) Frank A. Kaufman  
Frank A. Kaufman  
United States District Judge  

Approved as to Form and  
Service of a copy admitted  
this 19 day of October, 1976  
(s) Thomas G. Banjanin  
Thomas G. Banjanin  
Assistant United States Attorney  
(s) Bruce A. Kaufman  
Bruce A. Kaufman  
Esquire  

\* \* \*

This opinion follows that Order. The fact that in accordance with the request of counsel for the wife and the Government, this Court will await the opinion of Maryland's highest Court before determining what the United States as garnishee is or is not required to do in no way affects the removal right of the United States under section 1442(a). It does, however, make this Court wonder why the Government exercised that right in this case.

**13.** The reporter's headnote to that opinion refers to child support and alimony payments. However, the opinion itself speaks only of the

lative history of 42 U.S.C. § 659 as well as of 42 U.S.C. § 652(a)(8) and § 660. That latter section provides:

> The district courts of the United States shall have jurisdiction, without regard to any amount in controversy, to hear and determine any civil action certified by the Secretary of Health, Education, and Welfare under section 652(a)(8) of this title. A civil action under this section may be brought in any judicial district in which the claim arose, the plaintiff resides, or the defendant resides.

Section 652 states in part:

> (a) The Secretary shall establish, within the Department of Health, Education, and Welfare a separate organization unit, under the direction of a designee of the Secretary, * * * who shall—
>
> * * * * * *
>
> (8) receive applications from States for permission to utilize the courts of the United States to enforce court orders for support against absent parents and, upon a finding that (A) another State has not undertaken to enforce the court order of the originating State against the absent parent within a reasonable time, and (B) that utilization of the Federal courts is the only reasonable method of enforcing such order, approve such applications;
>
> * * * * * *

In *Bolling* there had been no finding or certification by the Secretary of HEW or any of his designees that use of the federal court was required. In *Bolling* original federal jurisdiction was asserted by plaintiffs. This Court agrees with Judge Martin's holding negativing such assertion.[14] Only when the conditions of sections 660 and 652(a)(8) are met does original jurisdiction

exist pursuant to the 1974 legislation under consideration herein. But in this case the issue relates to removal jurisdiction under section 1442(a)(1), not to original jurisdiction.

In *Wilhelm v. United States Dep't of Air Force, supra,* removal rather than original jurisdiction was involved. Therein, the Court also discussed legislative history, stating (at 165):

> Although this dialogue does not reveal specifically that the legislators considered § 1442, it does reveal that the implementation of 42 U.S.C. § 659 clearly was intended to fall on the state courts.

Judge Bue's said observation was based upon part of a discussion involving Congressmen Ullman and Eckhardt. However, prior to the interchange between those two men, during the course of a debate on the floor of the House of Representatives on December 20, 1974, Congressman Ullman, who outlined the history of the legislation, was asked by Congressman Kazen (120 Cong.Rec. H12,586 (daily ed. Dec. 20, 1974)):

> MR. KAZEN. * * * Is the Federal Government going to be subject to State court orders? How is it going to be enforced? Or is that mother of the children going to have to go into Federal court?
>
> MR. ULLMAN. It is based on the State court order for child support. We have provided that the Secretary can allow entry into the Federal courts in some instances only when it cannot be properly taken care of under the State court order.
>
> MR. KAZEN. In other words, what the gentleman is saying is the Federal Government going to be subject to State court orders, so far as garnishment is concerned?
>
> MR. ULLMAN. We just simply have found no better way to do it. If a father

---

former, stating (at 1313): "In both of these cases, the plaintiff seeks to enforce the individual defendant's child support obligations." In the within case, while only alimony payments are involved, such payments of course relate to family support. Section 659 specifically refers to alimony as well as to child support. The legislative history also indicates intent to legislate as to alimony, not just as to child support.

*See, e.g.,* 120 Cong.Rec. H12,585–86 (daily ed. Dec. 20, 1974) (remarks of Rep. McFall).

14. To the same effect, *see also Carroll v. Carroll,* No. P–Misc. 75–63 (N.D.Fla., filed 7/29/76); *cf. Popple v. United States,* 416 F.Supp. 1227 (W.D.N.Y.1976). A copy of the opinion in *Carroll* has been filed in the court file in this case.

has run away from his family and his obligations, there is the problem that we have been trying to face up to for a long time but have not, as to how we can get to that father to make him live up to his obligations.

\* \* \* \* \* \*

Subsequently (at 120 Cong.Rec. H12,586) Congressmen Ullman and Eckhardt engaged in a colloquy during which they spoke in part as follows:

MR. ECKHARDT. \* \* \* In Texas, we do not have garnishment of wages, so this would be ingraining the Federal law on existing State law. Under circumstances like that I would think the case would be removable to the Federal court as a matter of right.

Is that what the gentleman feels would result? Can these cases all be removed to Federal courts?

MR. ULLMAN. No. The garnishment provision places the U.S. Government in the same position as a private employer. Nonsupport cases can be certified to the Federal courts only by the Secretary of HEW who must find that use of the Federal courts is the only reasonable way to enforce a court order. In the situation the gentleman cites, there would be no court order on which to base such a finding.

MR. ECKHARDT. But ordinarily, of course, the State court retains jurisdiction of a divorce question. I just wonder what happens if we remove that case to Federal court on Federal court jurisdiction bases.

Mr. Speaker, it seems to me we have a lot of very thorny conflict-in-law questions here.

MR. ULLMAN. Mr. Speaker, as a matter of Federal law, this in no way changes that situation at all. The existing law remains. They have the right now and they would continue to have the right.

MR. ECKHARDT. Then that would negate the provisions for removal in this act?

MR. ULLMAN. No, we do not affect that way or the other.

MR. ECKHARDT. Then we would not remove a divorce case to Federal court with respect to this issue?

MR. ULLMAN. We do not affect existing law in that regard at all.

MR. ECKHARDT. Mr. Speaker, I really do not understand the answer.[15]

Thus, although not free from ambiguity, the legislative history is not inconsistent with a recognition of a distinction between original and removal jurisdiction. Further, there is no indication in either the letter or the spirit of the wording of section 659, or of any provision of the Social Services Amendments of 1974 of which section 659 is a small part, which suggests that the Congress intended to alter the reach and effect of section 1442(a)(1). In that context, legislative history must be very clear indeed to cause a federal district court to interpret narrowly, rather than broadly, the combination of sections 1442(a)(1) and 659.[16] And, in this instance, as illustrated *supra,* the relevant legislative history is far from clear.[17]

---

15. *See also* 120 Cong.Rec. H12,590 (remarks of Rep. White and Rep. Pettis).

16. For discussion of the effect of legislative histories in other contexts, *see NLRB v. Plasterers' Local Union No. 79,* 404 U.S. 116, 128–29 & n.24, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971); *Jewell Ridge Coal Corp. v. Local 6167, UMW,* 325 U.S. 161, 168–69 & n.1, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945); *Pennsylvania R.R. Co. v. International Coal Mining Co.,* 230 U.S. 184, 198–99, 33 S.Ct. 893, 57 L.Ed. 1446 (1913); *Banco Mexicano de Commercio e Industria v. Deutsche Bank,* 53 App.D.C. 266, 289 Fed. 924, 928 (1923), *aff'd,* 263 U.S. 591, 44 S.Ct. 209, 68

L.Ed. 465 (1924). *See also* Annot. 70 A.L.R. 5 (1931).

17. In a few cases removal of garnishment actions instituted in state courts on the authority of section 659 has been accomplished without any jurisdictional question seemingly being raised. *Crane v. Crane,* 417 F.Supp. 38 (E.D. Okl.1976); *Iowa-Des Moines Nat'l Bank v. United States,* 414 F.Supp. 1393 (S.D.Iowa 1976); *Samples v. Samples,* 414 F.Supp. 773 (W.D.Okl.1976). In those cases, however, neither the legislative history of section 659 and the legislation of which it is part nor the effect of sections 652(a)(8) and 660 was considered.

The 1974 amendments and the discussions about them in Congress are and were keyed almost entirely to child support and, in connection therewith, *inter alia,* to (a) the provision of federal funds to those states which establish programs to aid and service needy families with children and to (b) the definition of the duties of the Secretary of HEW with relation to those pro-grams. Section 652(a)(8) and section 660, both of which are relied upon in *Bolling,*[18] enable the Secretary to permit *state governments* to utilize federal courts to "enforce court orders for support against absent parents" under certain conditions. Those provisions created original federal jurisdiction to aid the states, not to take away from federal officers any existing re-moval rights under section 1442(a)(1). There is no indication in the language of the 1974 legislation or in the legislative history preceding it that the Congress in any way intended to undercut doctrines long espoused by the Supreme Court and the lower federal courts relating to removal under section 1442(a)(1) of suits brought against federal officers in state courts. The purpose of those doctrines is to permit federal officers, when called upon to per-form their official duties in ways different than they are willing to perform them short of federal court orders, to seek determina-tions in federal courts. That purpose in no way conflicts with the purposes underlying the 1974 legislation, including section 659. If the Congress had desired to negate re-moval jurisdiction in relationship to section 659, it could easily have so done. In this Court's view, the Congress to date has not so done. It follows that section 1442(a)(1) removal jurisdiction in a case such as the within one continues to exist.

### ORDER

For reasons set forth in an opinion filed this 27th day of December, 1976, all out-standing motions to remand of the wife as garnisher are denied. The Clerk is directed to send copies of the opinion filed today and of this Order to counsel of record. It is so ORDERED, this 27th day of December, 1976.

---

**18.** Section 660 is also discussed in *Wilhelm* at 164. Both section 660 and section 652(a)(8) are referred to in *Golightly* at 863.